CRAVATH and another vs. ESTERLY.

PROMISSORY NOTE : *Note payable in bank.—Payment by bank to indorsee at payee's request.*

Defendant's accommodation note, payable in bank, was by the payee indorsed to his creditor as collateral security, and, on presentment at maturity, was paid by the bank *at the payee's request,* without any notice to defendant. *Held,* that these facts show a *payment* of the note to the indorsee with moneys obtained from the bank by the payee, and that the latter alone (and not the defendant) is liable to the bank or its assignees.

APPEAL from the Circuit Court for *Walworth* County.

On the 1st of October, 1864, defendant executed three promissory notes, payable at three, four and five months respectively, to the order of S. C. Hall & Co., at the bank of Whitewater; the first being for $913.13, and each of the others for $900. These notes were indorsed to E. Corning & Co., were by them indorsed to the American Express · Company (really for collection, though that was not expressed in the indorsement), and were paid by the bank when presented by said company at maturity, and were charged by the cashier to " bills receivable." Shortly after, the bank made a general assignment to the plaintiffs in this action, for the benefit of its creditors ; and the plaintiffs brought this suit upon the notes against the maker. The defendant having answered, the cause was referred

for trial; and the referee found that defendant was an accommodation maker of the notes; that when they matured, S. C. Hall was president of the bank of White-water, and had for several years been one of its principal financial managers; that the cashier of the bank paid the notes, with the money of the bank, by direction of said Hall, the defendant not having funds in the bank to take them up; that they were not protested, and no notice was given defendant that they were held by the bank. The referee further reported, as his conclusions of law, that the bank, by its payment of the notes, became their owner, and that plaintiffs, as assignees, were entitled to judgment for their amount. The court held, that by making the notes payable at the bank, the defendant authorized the bank to pay them at maturity, and having done so it could hold them as security for the amount paid, and maintain an action upon them. Judgment against the defendant; and he appealed.

*Conger & Sloan*, for appellant, contended that payment of the notes by the bank, for the benefit of Hall, without the authority or knowledge of the defendant, did not give a right of action against the latter, especially when he was not a dealer at the bank, citing Edwards on B. & N. 535, 536; *Fulton Bank v. Canal Co.* 4 Paige, 136; *National Bank v. Norton*, 1 Hill, 578; *Fulton Bank v. Benedict*, 1 Hall, 497, 557; *Washington Bank v. Lewis*, 22 Pick. 31; *Smith v. South Royalton Bank*, 32 Vt. 341; *Bank of U. S. v. Davis*, 2 Hill, 451: *Porter v. Bank*, 19 Vt. 410; *Trenton Banking Co. v. Woodruff*, 1 Green's Ch. 117; *N. H. & D. Bridge Co. v. Bank*, 3 Coms. 156, and distinguishing *Watervliet Bank v. White*, 1 Denio, 608, and *Griffin v. Rice*, 1 Hilt. 184.

*T. D. Weeks*, for respondents, contended that the making of a note payable at a specified bank is equivalent to a request to the bank to pay it (*Griffin v. Rice*, 1 Hilt. 184; *Union Bank v. Griffin*, 4 N. Y. Leg. Obs.

344; *Irving Bank v. Wetherald,* 34 Barb. 323; *Mande-ville v. Union Bank of Georgetown,* 9 Cranch, 9); and that a note indorsed in blank and sent for collection may be paid, and held as security against the maker. *Watervliet Bank v. White,* 1 Denio, 608; *Canal Bank v. Bank of Albany,* 1 Hill, 292; Chitty on Bills, 542.

DIXON, C. J. We need not consider what the rights of the bank, or of the plaintiffs as its assignees, would have been, provided the notes had been paid by the bank on the sole ground that they were made payable there, and because of the implied request or authority in such cases that the bank shall pay and charge the same to the account of the maker of the notes. It appears that the defendant was not a customer of the bank, and had no money on deposit, or account or dealings with it; and it is contended in such case that there exists no request or authority for the bank to pay and charge the maker absolutely with the amount, and that, if it does pay, it becomes a mere purchaser of the notes, holding them subject to any defense which the maker might otherwise have made. But the case is cleared of this and all like questions by the proofs and the findings of the referee. The proof is, that the notes were paid by the direction of S. C. Hall, and the referee so finds. S. C. Hall was the debtor—one of the parties who ought to have paid the notes, and who was ultimately liable to pay them or the sums secured by them. As to him, the defendant was a mere surety. The notes were accommodation paper, executed by the defendant to S. C. Hall & Co., to enable them to secure a debt which they owed to E. Corning & Co., to whom the notes were indorsed and delivered as collateral. This the referee also finds. When the notes matured and were presented at the bank for payment, Hall directed the cashier to pay them, and he did so with the money of the bank, charging the amounts to "bills receivable."

He made no charge to the defendant, nor was the defendant notified that the notes were in the bank for collection, or required to pay them, or informed that the bank had paid them and held them against him for payment. Mr. Hall was the president and one of the principal financial managers of the bank at the time, and the circumstances of payment are inexplicable except upon the hypothesis that the notes were paid by the bank at his request, or in consequence of his direction and upon his credit, and that he became the debtor of the bank for the amounts. This is the most reasonable and only satisfactory explanation of the transaction. Mr. Hall had agreed with the defendant, at the time they were given, to pay the notes at maturity, which is no more than would be implied perhaps from the fact that the notes were given without consideration. He was desirous of performing this agreement, and when the notes were presented he told the cashier to pay them. His relations with the bank were such that he could obtain credit there at any time. Being its highest officer and chief financial manager, the bank was willing to trust him, and he borrowed the money as a temporary expedient. It seems incredible that the notes should have been thus received and paid by the bank without notice to the defendant, and without demand made of him until after failure and assignment by the bank, unless such was the true history of the transactions; and we believe that it was. We believe that Mr. Hall borrowed the money from the bank to pay the notes, and that he did pay them, intending to reimburse the bank in a few days, or at his earliest convenience. And we think it must have been so understood by the cashier. For he testifies, " I charged it to bills receivable, because that was the quickest way to get it out of the way. Hall told me to pay the notes. S. C. Hall, after the first note was paid, said, hold it a few days and he would see about it." This

indicates the nature of the transactions between Mr. Hall and the bank with considerable clearness. It shows that he was a borrower of the money, and that the notes were paid. If this was so, then it is clear that the liability of the defendant was extinguished, and that no action can be maintained against him by the plaintiffs or any one else to enforce payment of the notes.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions that it be dismissed, with costs to the defendant.