### GREENING vs. PATTEN and others.

*December 24, 1880 — January 11, 1881.*

PROMISSORY NOTES. *(1) What constitutes payment. (2) Transfer of paid note by maker. Estoppel. (3) Note of town treasurer to town for money borrowed from town treasury.*

1. Where the principal maker of a note past due, without the knowledge or consent of his sureties to the same, borrows money upon a new note with other sureties, for the purpose of taking up the first note, with the

understanding that the first note, when taken up, shall be transferred to such new sureties as collateral security, and the money so borrowed is used in fulfilling and satisfying the purpose for which the first note was given, this amounts to a payment of the same, and the sureties thereon are discharged.

2. The principal maker, by so transferring the first note, after its payment, to the new sureties, in consideration of their becoming such, is *estopped* (as against them) from alleging that such note was in fact paid.

3. Whether a town treasurer can borrow moneys which are, or are supposed to be, in his hands as such, and give a valid note therefor, *quære*.

APPEAL from the Circuit Court for *Calumet* County.

Action on a promissory note. The facts shown by the evidence are thus stated by Mr. Justice CASSODAY: " The undisputed evidence in this case shows, in effect, the following facts: April 3, 1875, the defendant *Patten* was treasurer of the town of Chilton; to which office he had been elected the year previous, and as such was liable on his official bond for all moneys coming into his hands as such treasurer. A short time prior to that date, he had collected a tax of $1,000, designed to be used in discounting and taking up certain coupons to certain bonds previously given by the town and coming due August, 1875, and thus saving a portion of the interest. Instead of paying and taking up the coupons in advance, according to custom, *Patten* had, a short time prior to April 3, 1875, used a portion of the $1,000 for his own private purposes; and so, at a meeting of the board at said last-mentioned date, he voluntarily proposed to retain the same for his own private use, and pay the town the amount which would be saved by paying the coupons in advance. The board assented to this proposition, and so *Patten*, to secure performance on his part, delivered to the board, and they accepted, the note in question, dated April 3, 1875, signed by himself and the three *McCooles*, wherein they jointly and severally promised to pay, on or before August 1, 1875, to the board of supervisors of the town of Chilton and their successors in office, the sum of $1,000, etc. April 6, 1875, *Patten* was reëlected

treasurer of the town, and April 10, 1875, gave a new bond to the board in the penal sum of $12,000, as such treasurer, signed by himself as principal and by the three *McCooles* and three other persons as sureties, and duly qualified as such treasurer. August 9, 1875, *Patten*, not having money enough to pay and take up the coupons by $800, applied to Corcoran for a loan of that amount, and was informed that if he would get the plaintiff and O'Neil to sign the note with him, Corcoran would let him have the money. Thereupon *Patten* called upon the plaintiff, *Greening*, and informed him of his deficiency to the town, his giving the $1,000 note and the sureties thereon, and his desire to get $800 to square up the $1,000 with, and that he, *Greening*, could get the money for him of Corcoran, if he wanted it, as he was willing to loan *Greening* the $800. *Greening* then told *Patten* he would get the money for him if he would give him security; whereupon *Patten* proposed to take the money which should be obtained of Corcoran to the town board, and get the $1,000 note, and send it by mail to the plaintiff. *Greening*, after taking advice in regard to it, agreed to sign the $800 note for the purpose mentioned. In pursuance of that understanding, August 9, 1875, *Patten*, *Greening* and O'Neil all signed a note, wherein they, for value received, promised to pay, one year after date, to the order of Michael Corcoran, $800, with interest at the rate of ten per cent. until paid; and that note was delivered to Corcoran, and he delivered the $800, with which *Patten* paid the interest due on the coupons, about August 10, 1875; and took them to McCabe, chairman of the town board, who thereupon delivered the $1,000 note to *Patten*, because he was satisfied that the purposes for which the note was given had been fulfilled; and thereupon, at the request of *Patten*, McCabe signed the following indorsement on the back of the note: 'Pay the within note to *Philip Greening* and James O'Neil;' which note, so indorsed, *Patten* then sent to *Greening* as agreed; and, upon its receipt, *Greening*, as he had

Greening vs. Patten and others.

agreed, sent *Patten* a receipt for the note, dated August 9, 1875, and signed by himself and O'Neil, acknowledging the receipt, and stating 'which note we are to·hold as collateral security for the payment of a certain note we have this day signed *as sureties* with the said *Patten*, and to be returned to the said *Patten* when he shall pay said note given to Michael Corcoran for the sum of $800 and ten per cent. from date.' Prior to the commencement of this action, O'Neil transferred whatever interest he might have in the $1,000 note, to the plaintiff; but neither of them had paid or taken up the Corcoran note; and this action is brought upon the $1,000 note, on the ground that the transaction constituted a purchase by him."

The circuit court instructed the jury, among other things, that the note was valid, and the main question was whether it had been paid; that if the amount due upon it had been paid to and received by the town or its chairman for the purpose of extinguishing the note, no subsequent act of *Patten* could give it further life; that if the money raised upon the security signed by the plaintiff was by agreement between *Patten* and plaintiff to be applied in obtaining a transfer of the note from the town to the plaintiff, and if *Patten* informed the chairman of the town board of that agreement, and the chairman signed the transfer to carry out the agreement, then the note was not paid but transferred, and plaintiff was entitled to recover on it; that if, on the other hand, *Patten* paid the money to the chairman of the town without informing him of any such agreement and purpose with respect to transferring the note to plaintiff, then the note was paid, and they should find for all the defendants except *Patten;* and that if, after the note was in fact paid, *Patten* delivered it to the plaintiff as a valid existing note, he was himself liable upon it.

There was a verdict in favor of the plaintiff and against all the defendants jointly, for the sum of $986.67; a new trial was refused; and defendants appealed from a judgment on the verdict.

For the appellants there was a brief by *Thomas Lynch*, and oral argument by *Mr. Lynch* and *Wm. F. Vilas.*

*Edward S. Bragg*, for the respondent.

CASSODAY, J.  We are convinced from the evidence that the $800 obtained of Corcoran was the property of *Patten* and not of *Greening* and O'Neil, they being mere sureties upon his note; and that when *Patten* paid and took up the coupons and presented them, or a receipt of their payment, to McCabe, the chairman, he had thereby fully satisfied and fulfilled the purposes for which the note was given; and that McCabe thereupon surrendered the note to *Patten* because *Patten* had fulfilled and satisfied the conditions for which the note was given to the chairman.  The transaction clearly shows a payment of the note by *Patten*, and not a purchase of it by *Greening* and O'Neil; and especially is this so as to the *McCooles*, who only signed as sureties, and who had no knowledge nor information of the transaction between *Patten* and *Greening*, nor of the transaction between *Patten* and Mc-Cabe, both of which occurred after the maturity of the note.  The case of *Eastman v. Plumer*, 32 N. H., 238, was not as favorable to the surety as this.  There the principal maker paid and took up the note with money belonging to a third person, who had sent the principal with the money to purchase the note as his agent.  To the same effect is the very clear opinion of WOODRUFF, J., in *Chester v. Dorr*, 41 N. Y., 279; and so also the decision in *Lancey v. Clark*, 64 N. Y., 209. We would refer, also, to the opinion of DIXON, C. J., in *Pelton v. Knapp*, 21 Wis., 70, 72, and *Cravath v. Esterly*, 26 Wis., 675; *Watson v. Wilcox*, 39 Wis., 643.  It follows that the payment of the note fully discharged the *McCooles* from all further liability.  As to *Patten* a different question is presented, for he re-issued the note in consideration of the signatures of *Greening* and O'Neil; and, as it was due at once, and the Corcoran note not till a year later, we are inclined to think

than an action can be maintained against *Patten*, as he is estopped from alleging that the note is paid.

Whether this note was valid in its inception, may be a serious question. The law prescribes the duties, liabilities and responsibilities of the town treasurer. The funds collected by him belong to the town, to be kept and paid over as prescribed. Can the town treasurer, by any arrangement with the town board, convert such funds into his own private property, and substitute therefor some agreement of the treasurer, different from that prescribed by law? Can the town board, by taking such note, postpone the time of payment of the town treasurer, and, if so, for what period? It may be that this was a mere defalcation, and a settlement therefor; but, if so, it is a little singular that subsequent to the giving of the note he was reëlected and again qualified. We do not, however, pass upon this question, but prefer to rest our decision upon the other grounds. We therefore hold, (1) That where the principal maker of a note past due, without the knowledge or consent of his sureties to the same, borrows money upon a new note with other sureties, for the purpose of taking up the first note, with the understanding that the first note, when taken up, shall be transferred to such new sureties as collateral security, and the money so borrowed is used in fulfilling and satisfying the purposes for which the first note was given, it amounts to a payment of the same, and the sureties thereon are thereby discharged. (2) That the principal maker, by so transferring the first note, after its payment, to the new sureties in consideration of their becoming such, is thereby estopped from alleging that such first note was in fact paid. (3) Whether a town treasurer can borrow moneys in his hands, or supposed to be there, and give a valid note therefor, *quære*.

*By the Court.*— The judgment is reversed, and the cause is remanded for a new trial as to all of the appellants except *Patten;* and as to him the judgment is affirmed.