ELISHA W. CHESTER, Respondent, v. CHARLES H. DORR, et al., Executors of JAMES A. DORR, deceased, Appellants.

An accommodation indorser, without consideration, of a promissory note, is not liable to a transferee of the note after maturity from the person for whose accommodation it was indorsed, although such transferee paid a full consideration.

The defence of want of consideration attaches to the note, after maturity, into whose hands soever it may then come.

Accordingly, where the defendant indorsed for the accommodation of M., without consideration, a promissory note, made payable by the maker to the defendant's order, for the purpose of enabling M. to get such accommodation indorsement from the defendant; and this note having been held by M. until after maturity, and then transferred, by him, for a full and good consideration, to the plaintiff,—*Held* (HUNT, Ch. J., and MASON, J., *contra*), that the latter could not recover of the defendant upon the indorsement.

(Cause argued September 28th, 1869, and decided December 21st, 1869.)

APPEAL from a judgment of the General Term of the New York Superior Court, affirming a judgment for the plaintiff upon the report of a referee.

This action was originally brought by one Harrington, plaintiff's assignor, against James A. Dorr, the defendant's testator, as indorser of eight promissory notes made by the Northfield Brick Company.

The notes bear date respectively January 15th, 20th, March 20th, April 9th, and April 15th, 1858; and matured respectively on September 18th, 23d, and October 12th, 18th, 23d, 1858.

Dorr indorsed these notes at the request of one Myers, and solely for his accommodation, as a friendly act to him, and without consideration.

Myers held the notes at maturity; and some two or three years after the notes had matured and been dishonored, he transferred them to the original plaintiff in this action for some of his own notes that had been dishonored.

The action was originally tried before one of the justices of the Superior Court, and a jury.

Under the direction of the court, a verdict was then rendered for the defendant.

The plaintiff then appealed to the General Term of the Superior Court, and the verdict was set aside and a new trial ordered. The case was then tried before a referee, who reported in favor of the plaintiff.

Judgment was entered upon the referee's report, and the defendant then appealed to the General Term of the Superior Court, and the judgment was affirmed.

The plaintiff Harrington (who is now deceased), assigned his claim to Elisha W. Chester, in whose name the suit is now prosecuted.

The defendant, Dorr, is now deceased, and the action is continued against his executors.

The following was the form of the notes:

"NORTHFIELD, <i>January</i> 15th, 1858.

"$500.00.

"Eight months after date, we promise to pay to the order of James A. Dorr, five hundred dollars, at No. 34 Pine street, New York city.

"THE NORTHFIELD BRICK COMPANY.

"By JAMES A. DORR, <i>Treasurer.</i>"

Indorsed,

"Protest waived,

"JAMES A. DORR."

The referee found as facts, that the Northfield Brick Company, in or about the month of June, 1858, made the eight several promissory notes, which are described and set forth in the complaint in this action, bearing the dates and for the amounts, and payable at the times and place in the complaint stated, and which amount in all to the sum of $4,000. Second, that at the time of the making of the notes, the company were indebted to Michael A. Myers in the sum of $4,000, which indebtedness was evidenced by notes given by the company and held by Myers, and which were past due and unpaid. Third, that Myers surrendered to the company the past due notes, so held by him, and received therefor the

notes in the complaint mentioned and described; and that
the last mentioned notes were indorsed by the defendant
James A. Dorr, at the request of Myers, and to enable him,
Myers, to use them. That no consideration was paid to the
defendant for so indorsing the notes, but that Myers gave to
the company, for the notes in the complaint described, so
indorsed by defendant, the past due and unpaid notes of the
said company hereinbefore mentioned. Fourth, that there
was no agreement between Myers and defendant, by which
Myers was restricted as to the use which he might make of
the notes in the complaint mentioned, or any or either of
them. Fifth, that Myers continued to hold the notes in the
complaint described until after their maturity; and that after
such maturity of the notes, Myers transferred and delivered
the same to the plaintiff, Henry J. Harrington, for a full and
valuable consideration, equal in amount to the amount of the
notes paid by the plaintiff to the said Myers therefor.

*Elisha W. Chester*, the respondent in person, cited *De
Zeng* v. *Fyfe* (1 Bosw., 335); S. C., 2 id., 398, Affd. in Ct.
of Appeals; Edwards on Bills, 316; *Smith* v. *Knox* (3 Esp.
R., 46 per Lord ELDON); *Bank of Rutland* v. *Buck* (5 Wend.,
66); *Powell* v. *Waters* (17 John., 176); *Grandin* v. *Le Roy*
(2 Paige, 509); *Seneca Co. Bank* v. *Neass* (3 Coms., 442);
*Deuel* v. *Spence* (1 Abbott, 237); *Mohawk Bank* v. *Corey* (1
Hill, 513); *Brown* v. *Mott* (7 John. R., 361); *Grant & Carey*
v. *Ellicott* (7 Wend., 227); *Sturtevant* v. *Ford* (4 Mann. &
G., 101); *Caruthers* v. *West* (11 Q. B., 143); *Charles* v.
*Marsden* (1 Taunt., 224); *Parr* v. *Jewell* (16 Com. Bench 81).

*Benjamin D. Silliman*, for the appellant, cited *Wright* v.
*Garlinghouse* (26 N. Y. R., 539); *Farrington* v. *Park
Bank* (39 Barb., 645); *Johnson* v. *Bloodgood* (1 Johns'. Cases,
51); *Sebring* v. *Rathbun* (1 Johns'. Cases, 331); *O'Callaghan*
v. *Sawyer* (5 Johns., 118); *Lansing* v. *Lansing* (8 Johns.,
454); *Havens* v. *Huntington* (1 Cow., 387); *Williams* v.
*Matthews* (3 Cow., 252); *Furness* v. *Gilchrist* (1 Sand. Sup..

53); *Reed* v. *Warner* (5 Pai., 650); *Britton* v. *Bishop* (11 Verm., 70); *Odiorne* v. *Howard* (10 N. H., 343); *Bower* v. *Hastings* (36 Penn., 285); *Cummings* v. *Little* (45 Maine R., 183); *Andrews* v. *Pond* (13 Pet., 79); *Fowler* v. *Brantley* (14 Pet., 318); *Bacon* v. *Burnham* (37 N. Y. R., 614); *Foley* v. *Smith* (6 Wallace U. S. C. R., 492); Byles on Bills, 94, 95 ; *Reynolds* v. *Doyle* (1 M. & G., 753); S. C., 2 Scott N. R., 45 ; Story on Bills, §§ 187, 191; *Bank of Toronto* v. *Hunter* (4 Bosw., 646); *Pitt* v. *Congdon* (2 Comst., 352); *Griffiths* v. *Read* (21 Wend., 502); *Pooley* v. *Harradine* (7 Q. B., 431); *Mutual Loan* v. *Ludlow* (5 Com. B. N. S., 646); *Taylor* v. *Burgess* (5 Hurl. & Norm., 1); *Rocheste.* *City Bank* v. *Elwood* (21 N. Y., 88); *Gates* v. *McKee* (3 Kern., 232); *Ludlow* v. *Simond* (2 Cai. Ca.); *Leeds* v. *Dunn* (6 Seld., 469); Pitman on Sureties, 172; *Combs* v. *Wolf* (8 Bing., 150); *Worrell* v. *Jones* (Cr. M. & Ros., 96); *Hall* v. *Hadley* (5 Bing., 54); *Birkhead* v. *Brown* (5 Hill, 635); *Vinton* v. *King* (86 Mass., 562); *Kellogg* v. *Barton* (94 Mass., 527).

WOODRUFF, J.   Mr. Justice STORY, in his Treatise on Promissory Notes, section 178, thus states the difference between the legal effect of the transfer of a promissory note, before and after maturity: "If the transfer is made before the maturity of the note, to a *bona fide* holder, for a valuable consideration, he will take it free of all equities between the antecedent parties, of which he has no notice.

If the transfer is after the maturity of the note, the holder takes it as a dishonored note, and is affected by all the equities between the original parties, whether he has any notice thereof or not. But,   *   *   it is not to be understood, by this expression, that all sorts of equities existing between the parties, from other independent transactions between them, are intended ; but only such equities, as attach to the particular note, and as between those parties, would be available to control, qualify or extinguish any rights arising thereon."

The learned author gives this as the final conclusion, from

the numerous cases cited by him, an examination of which shows, that it is only after some difference of opinion that it has come to be deemed settled.   Or, as Mr. CHITTY says, of the opinion of BULLER and ASHURST, JJ., in *Brown* v. *Davis* (3 T. R., 80), expressed, when Lord KENYON doubted its broad extent, "this latter opinion is now the law." That opinion was to the effect, "that where a note is overdue, that alone is such a suspicious circumstance, as makes it incumbent on the party receiving it, to satisfy himself that it is a good one, otherwise much mischief might arise."   "If a note indorsed, be not due at the time, it carries no suspicion whatever on the face of it, and the party receives it on its own intrinsic credit:   But if it is overdue, though I do not say that, by law, it is not negotiable, yet, certainly it is out of the common course of dealing, and does give rise to suspicion.   *   *   Generally, when a note is due, the party receiving it, takes it on the credit of the person who gives it to him."

The foundation of the rule, which distinguishes commercial paper from ordinary common law choses in action, is in harmony with the law thus stated; the holder of the former is protected against any inquiry into its previous history, and is warranted in giving it full faith, according to its tenor, because commercial convenience and the importance of the free and unembarrassed use of commercial credits required it; and on this, the mercantile customs, which ripened into the law merchant, were founded.   These reasons, however, could have no application to paper which had been dishonored.   The credit it was adapted to invite, is spent, and the very fact of dishonor, is inconsistent with the purposes which the rule was intended to subserve.

The rule is simple and convenient of application, is in no sense inconsistent with the usefulness of negotiable paper for the purposes for which it is intended, and, as it seems to me, is a just security against mischief and fraud.

In the terms, in which it is above stated, it includes the defence of want of consideration, whenever that renders the note invalid in the hands of him who holds it, when it becomes

due. Such want of consideration is an inherent defect in the contract itself. Or, in the language of the rule, attaches to the note itself, in the hands of one for whose accommodation a note is made, and does not, like a set-off or other collateral matter apart from the note, arise out of an independent transaction.

But the same learned writer, above referred to, states that the mere fact that an accommodation note has been indorsed after it became due, does not of itself, without some other equity in the maker, defeat a recovery by the indorsee. (Story, § 194.) And Mr. Chitty states that it has been so decided. The cases of *Charles* v. *Marsden* (1 Taunt., 224); *Sturtevant* v. *Ford* (4 Mann & Gr., 101); 4 Scott, 608, and *Caruthers* v. *West* (11 Q B., 143), are in support of the proposition.

These are the cases, upon the authority of which the present case was decided below.

I am constrained to say, that I am not satisfied that such an exception to the rule is either just, or called for by any principle, nor am I at all convinced by the reasons assigned for the exception.

That the maker or indorser of a note for the accommodation of another should be held to the terms of his own indorsement according to their just interpretation, I fully agree. That one who receives such paper before maturity, should not be affected by the mere fact that it was made or indorsed without consideration, I equally agree. That when a party lends his note or indorsement to another without restriction as to its use, he authorized the negotiation thereof in any manner which may serve the convenience, or credit of the borrower may be conceded.

From this latter concession it is argued, that such a lending of one's name is furnishing a continuing guarantee of the payment of the note, irrespective of its terms as to time of payment, and is therefore binding whenever it is transferred, and however long after it has become payable and been dishonored. That the absence of express restriction warrants

the inference, that the making or indorsement was to enable the borrower to use it whenever thereafter it suited his pleasure, and so " enforcing its payment is in accordance with the object for which the note was, as matter of accommodation, made or indorsed;" and in the discussion in England, it has been suggested, that supposing an accommodation acceptance to remain in the hands of the party accommodated, it may be treated as giving authority by implication to use it thereafter, as his convenience or needs may require.

In respect to the last suggestion, two observations are pertinent; first, it begs the question, for assuming the rule to be that he who receives a note or bill, after dishonor, acquires no better title to recover thereon, than he has, from whom it was received; then there is no reason why the accommodation maker or indorser should not treat the note in the hands of the borrower, after maturity, as *functus officio*, and mere waste paper. And, second, how is the maker or indorser, in such case, to withdraw his note or indorsement? Is he to be driven into a court of equity, and to praying out an injunction, to prevent a subsequent transfer? I think not. Take the present case; the note itself was the property of the holder at its maturity (Myers), and was a valid note, in his favor against the maker. The indorsement of the defendant (the appellant's testator) was material as a transfer of title, although, being made for Myers' accomodation, it could not be enforced against such defendant as indorser. I cannot agree, that it was incumbent on the defendant, to go into a court of chancery to compel Myers to suffer a writing of the words, "without recourse," or an equivalent expression, as a qualification of such indorsement.

As to the other reason, it is even less satisfactory, because it proceeds, I think, upon an entire misconstruction of the act of making or indorsing a note for the accommodation of another. Its purpose and object, is to obtain credit for such other, or to enable him to do so. The very terms of the note declare the credit it is intended to procure, that is to say, until the maturity of the note. Within that range, the making or

indorsement being unrestricted as to its use, the borrower may use it as his exigencies require, and a transferee may receive it in reliance upon the undertaking which is imported by its terms.

But the very term of payment, contained in the note, imports that the accommodation party undertakes that the note shall ·be paid *at its maturity ;* and that he who then holds the note, shall have recourse to him, if it be not *then* paid. Where the accommodation (as in the present case) is by indorsement, that is the precise contract, viz., that the note shall be paid at maturity, and not that it shall be paid at any *future time.* If the note be not paid at maturity, the contract is broken, and if he, who then holds it, can recover thereon, then his right of recovery may be transferred to another; and the recovery of the latter will be, not because the accommodation indorser undertook that the note should be paid to him, or should be paid at some date after it was due, but because a valid cause of action, existing in favor of the holder at maturity, has been transferred to him.

It is not according to the intent or meaning of an indorsement for another's accommodation, to say that the indorser intends to give the use of his credit for any other period than that limited in the note. Or that such an indorsement imports authority to use it, when that period has elapsed.

One may be willing by indorsement, to guarantee the solvency of another for sixty days, or for six months, and yet he would wholly refuse to do so for a period of two years. And accordingly, when such accommodation is given, it is a most material circumstance that the time during which the borrower is at liberty to obtain credit on the note, is fixed by the limitation of the time of payment therein.

I deem the just view of the subject to be, that when a note has become due and is dishonored, the rights and responsibilities of the parties thereto, are fixed. The note then loses the chief attribute of commercial paper. It is no longer adapted to the uses and purposes for which such paper is made, and in respect of which it is important that it should

circulate freely. And thereafter, he who takes it, takes it with knowledge of its dishonor, with obvious reason to believe, that there exists some reason why it was not paid to the holder; and takes it with just such right to enforce it as such holder himself has, and no other.

In thus stating my views, I am not insensible of the apparent authority for the decision made below, but I am also aware that the judges in England have not been at all agreed on the subject, and have expressed doubt of the correctness of the decision in *Charles* v. *Marsden,* upon which the other two cases above referred to were decided. The cases, largely. collected in the notes to Chitty in the recent edition, warrant, I think, the dissatisfaction I have expressed.

No case in this State has called for a decision of the question; and yet in *Brown* v. *Mott* (7 J. R., 361), and in *Grant* v. *Ellicott* (7 Wend., 227) the case of *Charles* v. *Marsden* is referred to without disapprobation, and the proposition derived therefrom is stated; but in neither was the point now raised before the court, for in neither did it appear, that the plaintiff took the note after it became due.

And that in other States in this country, such an exception to the general rule first above stated is repudiated, see *Brown* v. *Hastings* (36 Penn., 285); *Britton* v. *Bishop* (11 Vt., 70); *Odiorne* v. *Howard* (10 N. H., 343); *Cummings* v. *Little* (45 Maine, 183); *Vinton* v. *King* (86 Mass., 4 Allen, 563); *Kellogg* v. *Barton* (94 Mass., 12 Allen, 527). And the general proposition, that he who takes a note when overdue, takes it subject to all defences inherent in the note, or arising out of any agreement with the holder, expressed or implied, and relating thereto, or in another form, that such an indorsee obtains no greater or other rights than his indorser had in it at the time of the indorsement, has been stated as law in cases almost without number. It will, perhaps, suffice to refer to two from the Supreme Court of the United States. *Andrews* v. *Pond* (13 Pet., 79), says of the indorsee of a dishonored bill. "If he chooses to receive it, he takes it with all the infirmities belonging to it; and is in no better condition than the

person from whom he received it." (*Fowler* v. *Brantley*, 14 Pet., 321.) " A note overdue, or bill dishonored, is a circumstance of suspicion to put those dealing for it afterward on their guard, and in whose hands it is open to the same defences it was in the hands of the holder when it fell due. After maturity, such paper cannot be negotiable 'in the due course of trade,' although still assignable." See also *Foley* v. *Smith* (6 Wallace, 492).

In my own opinion, the just rule, and the rule resting on the soundest principle, requires us to reverse. The supposed exception to the general rule rests on neither reason, nor as I think on authority, certainly not in this country.

It was suggested by the counsel for the respondent, that as matter of fact, the defendant's indorsement was not without consideration, and for the accommodation of Myers, who held the note at maturity.

The finding of the referee on that subject is conclusive in this court; and that finding is, that the indorsement was made without consideration at Myers' request, and to enable Myers to use the notes. This is but a statement that the defendant indorsed the notes for the accommodation of Myers. It was so treated in the court below, and it is an unwarranted assumption to say, that possibly the defendant had some other inducement to indorse the notes, in order that the plaintiff might accept the notes, and give credit to the maker thereof, who was his debtor.

MURRAY, J., also read an opinion for reversal.

GROVER, LOTT, JAMES and DANIELS, JJ., concurred for reversal.

MASON, J., thought the law settled in this State in favor of the plaintiff, by the cases (7 Johns'., 361 ; 7 Wend., 227 ; and 1 Hill, 513), and was for affirmance.

HUNT, Ch. J., was also for affirmance. He did not approve of construing the defendants' contract as conditioned upon transfer before due.

Judgment reversed.