89  801
s96  786

𝔐𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

COTTRELL v. WATKINS ET ALS.*

March 30th, 1893.

1. ACCOMMODATION PAPER.—The purchaser of an accommodation note,
   after its maturity, gets no better nor greater right to enforce it
   against the maker or endorser than if it were ordinary negotiable
   paper given for value.
2. IDEM.—An accommodation note, paid at its maturity by the real
   debtor, though he is not a party to it, cannot be thereafter trans-
   ferred by him so as to give it validity against the accommodation
   maker and endorser.
3. LIMITATIONS OF ACTIONS.—Lapse of less than two and a half years
   after a sale under a deed of trust, procured through the fraudulent
   representations of one representing himself as entitled to the bene-
   fit of its provisions will not bar a suit to set aside the sale when
   the suit is not barred by the statute of limitations.
4. DECREE—*Motion to set aside—Laches.*—A decree sustaining a demurrer
   to a bill upon the ground of *laches*, whereby the plaintiff is com-
   pletely taken by surprise, should be set aside on his motion, when,
   during the same term of the court, he asks leave to file an amended
   bill, which fully explains any charge of *laches.*
5. IDEM—*Case at bar.*—In 1874 A made his accommodation notes, payable
   to and endorsed by B, and delivered them, secured by trust deed on
   his land, to C's creditor, in payment of C's debt.  At their maturity
   C paid the notes.  Instead of cancelling the notes, C, in 1884, en-
   dorsed them to W, who procured the trustees in the trust deed to
   sell the land therein described, and W became the purchaser.  In
   1891 A brought suit to set aside the sale and to cancel the trust
   deed.   The trial court sustained a demurrer on the ground of *laches,*
   and dismissed the bill, and refused to set aside the decree, though A,
   at the same term, asked leave to file an amended bill explaining
   away the charge of *laches.*

HELD :
     Error.

* See notes to this case, 19 L. R. A. 754.

Appeal from two decrees of circuit court of Henrico county, rendered on the 1st and 18th days of December, 1891, respectively, in the cause wherein John W. Cottrell and Harriet Ann, his wife, were complainants, and Charles T. Watkins, and John S. Wise and T. M. Logan, trustees, were defendants.

The case made by the bill is as follows : In the year 1873, and for some time prior thereto, one Joseph F. Cottrell, a brother of the plaintiff, John W. Cottrell, was engaged in the business of a wholesale and retail coal merchant in the city of Richmond, and in the latter part of that year failed in business, and, at the time of such failure, was indebted to the Clover Hill Railroad Company in the sum of about $1,262.02 ; and, in order to assist and enable said Joseph F. Cottrell to pay off and discharge his said indebtedness, his brother, the said John W. Cottrell, on the 7th day of April, 1874, purely for accommodation, and without any consideration whatever, executed three several negotiable notes—one for $412.33, one for $420, and one for $428.35—each dated on said 7th day of April, 1874, and made payable to the order of Benjamin Cottrell, another brother, at six, ten, and fourteen months, respectively, from date ; which notes were endorsed by the said Benjamin Cottrell, and passed to and accepted by said Clover Hill Railroad Company in full payment of said indebtedness of said Joseph F. Cottrell to said company ; and on the same day (April 7th, 1874,) the said John W. Cottrell and wife conveyed to John S. Wise and T. M. Logan, trustees, a certain tract or parcel of land, situate in the county of Henrico, containing forty-two and one half acres, more or less, in trust to secure to said Clover Hill Railroad Company the payment of said three notes, which said deed was duly placed on record in the clerk's office of Henrico county. That said Joseph F. Cottrell, though the original and real debtor to said railroad company in the sum repre-

sented by the notes executed and secured as aforesaid, was not a party to said notes; but, the real indebtedness being his, as said notes respectively became due they were paid off by him, and the indebtedness evidenced thereby was extinguished, and said notes were surrendered to him. But, instead of destroying, cancelling, or delivering said notes up to his brother, John W. Cottrell, the accommodation maker thereof, he retained the same in his possession until some time in the year 1884 or 1885, when he passed them to the defendant, Charles T. Watkins, in the course of business transactions with him, but whether or not for any consideration is not known.

However, it is alleged in the bill that said notes remained in the possession of said Watkins until after the death of said Joseph F. Cottrell, when, about the month of February, 1889, he (Watkins) represented to said John S. Wise and T. M. Logan, trustees as aforesaid, that he (the said Charles T. Watkins) was the lawful holder and owner of said three notes, secured by said trust deed; that they remained unpaid, and required said trustees to execute said trust by a sale of the land thereby conveyed, in accordance with the terms thereof; whereupon the land was advertised and sold by said trustees, and said Charles T. Watkins became the purchaser thereof at the price of $800 cash, being the highest bid made at the sale. And afterwards—to-wit, on the 28th day of March, 1889—by deed of that date, said trustees conveyed said land to said Charles T. Watkins, the alleged purchaser at said trustees' sale.

In June, 1891, the complainant, John W. Cottrell, filed his bill (his wife unnecessarily joining with him) against said Charles T. Watkins, and said Wise and Logan, trustees as aforesaid, in which, after setting forth substantially the circumstances above narrated, he charges that said Charles T. Watkins, in representing to said trustees, Wise and Logan,

that he was the lawful holder of said three notes, that they remained unpaid, and in requiring and thus inducing them to sell and convey the land in said trust deed mentioned, after the purpose for which said deed was executed had been accomplished, perpetrated a gross fraud upon him, the said John W. Cottrell; and that the said conveyance from said Wise and Logan, trustees, to said Charles T. Watkins, is fraudulent, and should be set aside.

And the prayer of the bill is, that said Charles T. Watkins be made a party defendant to the bill, and required to show cause why the said deed of conveyance from said trustees to him should not be set aside as fraudulent; that the complainant be allowed to prove the several averments and allegations in his bill contained; that said deed from said trustees to said Charles T. Watkins be annulled and set aside as fraudulent; that said trustees, Wise and Logan, be required to release unto complainant, by a good and sufficient deed, the said land conveyed to them in trust by said deed of April 7th, 1874, and for general relief.

At the August rules, 1891, the complainant filed an amended bill, in which he repeats all the allegations and charges contained in his original bill, and makes more specific the charge of fraud against the defendant, Charles T. Watkins, in procuring the sale and conveyance of the land conveyed by said trust deed. He says: "And your orator further shows unto your honor that the said Charles T. Watkins, after the death of the said Joseph F. Cottrell—to-wit, on or about the month of February, in the year 1889—having in his possession the said notes, did represent unto the said John S. Wise and T. M. Logan, trustees as aforesaid, that he (the said Charles T. Watkins) was the lawful owner of said notes, that said notes were unpaid, and that the same being in default, and that by virtue of the terms and conditions of the said trust deed, he (the said Charles T. Watkins) did, with

intent to defraud your orator, and to blind and deceive the said trustees, then and there require them (the said trustees) to proceed to make sale of the land mentioned in said deed of trust, for the payment of said notes; that the said trustees, acting under this advice, and by virtue of the power conferred upon them in said trust deed, did sell, at public auction, the said land, in accordance with the terms and conditions of said trust, and did later—to-wit, on the 28th day of March, in the year 1889—convey the said land to the said Charles T. Watkins, for the consideration of the sum of $800 in cash, he having been the highest bidder at the said sale. And your orator further shows unto your honor that the said foreclosure of said trust deed, after the purposes for which it had been executed had been accomplished, was a fraud upon your orator, designedly committed; that the requiring said trustees, Wise and Logan, to sell the said land was without warrant of law, and a great injustice upon your orator, and in violation of the intent and purpose of said deed of trust, which should have been released," &c.

And to the amended bill the complainant, in addition to the said Charles T. Watkins, makes John S. Wise and T. M. Logan, trustees as aforesaid, parties defendant, and calls upon all of the defendants for answers, but expressly waives answers under oath. In other respects the prayer of the amended bill is substantially the same as that of the original bill, including the prayer for general relief.

Process was duly executed upon the home defendants, Charles T. Watkins and T. M. Logan, one of said trustees, and John S. Wise, the other trustee, being a non-resident, an order of publication was duly executed as to him. Neither of the defendants answered, and the bill and amended bill was taken for confessed as to each of them; and the cause, being thus matured, was set for hearing; and, on the 1st day of December, 1891, when the cause came on to be heard,

the defendants, still failing to answer, by leave of the court filed their demurrer to the plaintiffs' original and amended bill, which demurrer is as follows : " The defendants say that the bill and amended bill are not sufficient in law." And thereupon the case was heard upon the demurrer alone, when the court rendered the following decree :

" This cause, which has been duly matured at rules, came on this day to be heard on both the original and amended bills of the plaintiffs, heretofore filed at rules, and on the proof of the order of publication had as to the non-resident defendant, John S. Wise, and duly published, and on the demurrer to both the original and amended bills of the plaintiffs, filed by leave of the court, in which demurrer the plaintiffs joined, and was argued by counsel.

" On consideration whereof the court doth sustain the said demurrer to both the original and amended bills, and doth adjudge, order, and decree that the said original and amended bills of the plaintiffs be dismissed, with costs."

On the succeeding day of the same term—to-wit, on the 2d day of December, 1891—the plaintiffs applied for and obtained an order of suspension, with the view of taking an appeal from said decree; and the term at which said decree was rendered having been continued by adjournment till the 18th day of December, 1891, on that day the plaintiffs, by counsel, tendered their second amended bill, and moved the court to set aside said decree of the 1st of December, 1891, dismissing said original and amended bills, and to allow them to file said second amended bill; which motion the court refused, but by its order of refusal made said second amended bill, so tendered and refused, a part of the record in the cause. And from said decree of December 1st, 1891, sustaining said demurrer and dismissing the bill of the plaintiffs, as well as from said decree or order of December 18th, 1891, refusing leave to file said second amended bill, the case is here on appeal.

*J. H. Webb Peploe,* for appellants.

*Page & Carter,* for appellees.

RICHARDSON, J., (after stating the case,) delivered the opinion of the court.

The first and main question in the case is, Did the court below err in its said decree of December 1st, 1891, sustaining the demurrer of the defendants to the bill of the plaintiffs, and in dismissing the said bill? This question can receive none other than an affirmative answer. It is unquestionably true that the plaintiffs' bill is inartificially drawn; but the real question is, not as to the mere form, but as to the substance of the case presented by the original and amended bills. Throwing aside all mere extraneous matter, the case made is substantially this:

Joseph F. Cottrell failed in business in the year 1873, and was indebted to the Clover Hill Railroad Company in the sum of about $1,262.02. That in order to aid and assist the said Joseph F. Cottrell in paying off and discharging said debt, and for his accommodation, without any consideration whatever, his brother, John W. Cottrell, the appellant here, made his three negotiable notes, amounting in the aggregate to said Joseph F. Cottrell's indebtedness to said railroad company; that said notes were each dated on the 7th day of April, 1874, and were made payable to Benjamin Cottrell, another brother, at six, ten, and fourteen months, respectively, from date; said notes were endorsed by said Benjamin Cottrell and passed to and accepted by said railroad company in full payment of the indebtedness aforesaid of Joseph F. Cottrell to said company; and that, by deed of even date with said notes, the appellant, John W. Cottrell, and Harriet Ann, his wife, conveyed to

John S. Wise and T. M. Logan, trustees, the tract of land in the bill and proceedings mentioned, in trust, to secure to said railroad company the payment of said three notes, which said trust deed was duly placed on record in the clerk's office of Henrico county.

That said Joseph F. Cottrell, though the real debtor to said railroad company, was not a party to said notes, but, being the real debtor, he paid them off as they respectively became due, and said notes were delivered to him, when it became his duty to cancel, destroy, or deliver said notes to the appellant, John W. Cottrell, the accommodation maker thereof; but, instead of so doing, he retained them in his possession, and afterwards passed them to the appellee, Charles T. Watkins, in the course of business 'transactions with him, but for what consideration, if any, does not appear.

That said notes remained in the possession of the appellee, Charles T. Watkins, until after the death of said Joseph F. Cottrell, when, some ten years after the maturity and payment of said notes, and after the purpose for which the said trust deed was executed had been accomplished, he (said Watkins) did, with intent to blind and deceive said trustees, and to defraud the appellant, John W. Cottrell, represent unto said trustees that he (the said appellee, Charles T. Watkins,) was the lawful holder and owner of said notes secured as aforesaid, that the same remained unpaid, and that he (the said appellee, Charles T. Watkins,) was entitled to have the land conveyed in said trust deed sold, in accordance with the terms and stipulations thereof; and that he thus procured the sale and conveyance of said land, and thereby perpetrated a gross fraud upon the appellant, John W. Cottrell.

Such is, substantially, the case made by the bill. Taking as true the allegations of the bill, (and upon demurrer they must be so taken,) it would be difficult to conceive of a more meritorious case, or one more clearly commending itself to the favorable consideration and aid of a court conscience.

The decree under consideration states no ground upon which the court below sustained the demurrer of the defendants to the plaintiffs' bill; but in the petition for appeal it is stated that the chief grounds of demurrer relied on by the defendants in the court below were these : 1st. That the notes secured by the deed of trust, being accommodation notes, were not subject to existing equities. 2d. That the fraud charged upon the appellee, Watkins, is not sufficiently specific. 3d. That as Joseph F. Cottrell, the original debtor, was dead, his personal representative should have been made a party defendant. And that the court, in an oral opinion, overruled each of the grounds of demurrer thus relied on by counsel for the defendants ; but that the judge, of his own motion, suggested *laches*, and upon that ground sustained the demurrer. This statement, though not strictly part of the record, is substantially admitted to be true in the elaborate note of argument filed by counsel for the appellee, Watkins. This was, to say. the least, a singular ground upon which to sustain the demurrer and dismiss the bill. In view of the case made by the original bill, as amended, the doctrine of *laches* and lapse of time could have no application whatever. The object of the bill was to set aside and annul the sale and conveyance of the land mentioned in the trust deed, upon the grounds—1st. That the notes secured by said deed, and to pay which said sale was made, had been previously paid, at maturity, by Joseph F. Cottrell, the real debtor, for whose accommodation they were made, endorsed, and passed to said railroad company in payment of the debt due it by said Joseph F. Cottrell. 2d. That having been thus paid at maturity, and the debt evidenced thereby extinguished, the notes could not thereafter be re-issued or passed to the appellee, Watkins, or to any other person, so as to bind the antecedent parties, or either of them—namely, John W. Cottrell, the maker, and Benjamin Cottrell, the payee and

endorser. 3d. That said sale and conveyance were procured by the said Watkins through false and fraudulent representations made by him to said trustees, to the effect that he was the lawful owner of the notes, secured by said deed of trust, and that the same were unpaid.

The land in question was sold by the said trustees about the month of February, 1889, and, on the 28th of March, 1889, was, by said trustees, conveyed to the purchaser, the appellee, Watkins; and this suit was brought in August, 1891—less than two years and a half after the sale and conveyance by said trustees. It is inconceivable, therefore, upon what principle it could be said that the appellant, John W. Cottrell, had been guilty of such *laches* as to bar his right to have a hearing in a court of equity touching the alleged gross fraud perpetrated upon him by said Watkins, and speedy relief upon proof of the case made by the bill.

Inasmuch, therefore, as the plaintiffs' right to maintain this suit was not barred by the statute of limitations, "it follows, as a necessary consequence, that *laches* and lapse of time constitute no such bar." *Foster* v. *Rison*, 17 Gratt. 335; *Coles* v. *Ballard*, 78 Va. 149; *Rowe* v. *Bentley*, 29 Gratt. 759. But it is useless to multiply authorities in support of a proposition so long and well established as is this. Moreover, the bill in the present case presents a case of rank and outrageous fraud. The well-established doctrine is that "cases of fraud, trust, and mistake are not within the statute of limitations." 1 Washington 145; *Massie* v. *Heiskell*, 80 Va. 805. "The defense of *laches* is, in equity, only permitted to defeat an acknowledged right on the ground of it affording evidence that the right has been abandoned." *Nelson* v. *Carrington*, 4 Munf. 332–343; *Massie* v. *Heiskell, supra.*

In the present case, the plaintiff below (the appellant here) was evidently taken by surprise, as he might well have been, when the court sustained the demurrer to his bill on the

ground of *laches ;* and hence it was that, at a subsequent day of the same term, he tendered his second amended ·bill, in which he fully and clearly explained everything savoring of any *laches* or acquiescence, and moved the court to set aside the decree rendered at a previous day of the same term, and to allow him to file said amended bill. But this will be more particularly noticed when we come to consider the decree of December 18th, 1891, refusing leave to file said second amended bill.

It appears, therefore, that, in considering the demurrer of the defendants to the plaintiffs' bill, the court below rejected all the grounds of demurrer relied on by counsel for the defendants, and upon its own motion sustained the demurrer, upon the ground of *laches.* And in this court the same counsel, seeming to take warning from the action of the court below, abandon the positions there urged, and rely mainly upon an exception in the case of an accommodation note to the general rule that, while a negotiable note may be transferred as well after as before it becomes due, the rights of the endorsee are very different in the two cases. The rule, and the exception thereto, is adverted to by Judge Moncure in *Davis* v. *Miller, &c.,* 14 Gratt., at pp. 5 and 6, as follows : " A negotiable note may be transferred at any time while it remains a good, subsisting, unpaid note, whether before or after it has arrived at maturity (Story on Prom. Notes, § 178); and in the latter case, even though it be protested for non-payment, and bear upon its face the marks of its dishonor. * * * But, though a negotiable note may be transferred as well after as before it comes due, the rights of the endorsee are very different in the two cases. 2 Rob. Pr. (new ed.) 252. In the case of a transfer of a note, before it becomes due, to a *bona-fide* holder for value, he takes it free of all equities between the antecedent parties of which he has no notice ;. and it has been held that even gross negligence would not

alone deprive him of his right. He thus often acquires a better right than that of the endorser under whom he claims. In the case of a transfer of an overdue note, the holder takes it as a dishonored note, subject to all the defenses and equities to which it was subject in the hands of his immediate endorser, whether he has any notice thereof or not. He receives nothing but the title and rights of such endorser. An exception exists in the case of an accommodation note, which is said, in general, to be governed by the same rules as negotiable paper for consideration. So that a *bona-fide* endorsee of such a note, whether before or after maturity, and though knowing it to be an accommodation note, may enforce it against the prior parties. In that case an endorsee of an overdue note acquires a right, though the endorser under whom he claims has none." Citing *Sturtevant* v. *Ford*, 43 Eng. C. L. R. 61 ; *Caruthers* v. *West*, 63 Id. 143 ; Story on Prom. Notes, § 178 ; 1 Parsons on Contracts 213–217.

It is true that Story and Parsons, as well as other American text-writers, recognize the exception to the general rule here under consideration, and state the exception in substantially the same language as that employed by Judge Moncure in *Davis* v. *Miller*, *supra*.

In Story on Prom. Notes (6th ed.), § 194, it is said : " The mere fact that an accommodation note has been endorsed, even after it became due, does not, of itself, without some other equity in the maker, defeat the rights of the holder. In short, the parties to every accommodation note hold themselves out to the public, by their signatures, to be absolutely bound to every person who shall take the same for value, to the same extent as if that value were personally advanced to them, or on their account, and at their request." Citing *Sturtevant* v. *Ford*, the first of the two cases referred to by Judge Moncure in *Davis* v. *Miller*, and *Thompson* v. *Shepherd*, 12 Met. 311.

In 1st Daniel on Neg. Insts. (ed. 1876), § 726, it is said:

" The general rule, that the purchaser of overdue paper can stand in no better position than his transferrer, does not apply so far as to invalidate bills and notes drawn, endorsed, or accepted for accommodation, overdue at the time they are negotiated or transferred, it being considered that parties to accommodation paper hold themselves out to the public, by their signatures, to be bound to every person who shall take the same for value, the same as if it were paid to themselves." Citing, in a note, *Charles* v. *Marsden*, 1 Taunt. 224, and *Sturtevant* v. *Ford* and *Caruthers* v. *West*, the last two being the cases referred to by Judge Moncure in *Davis* v. *Miller*. But the learned author proceeds to say : " And the fact that the purchaser knew that the paper was so drawn, endorsed, or accepted for accommodation does not weaken his position. This principle is well established in England, and it is to be regretted that the decisions in the United States do not uniformly follow the English rule." And in notes to this section the author cites, as favoring the doctrine of the text, *Charles* v. *Marsden*, 1 Taunt. 224 ; *Sturtevant* v. *Ford*, 43 Eng. C. L. R. ; *Caruthers* v. *West*, 63 Eng. C. L. R. ; *Stien* v. *Yglesias*, 1 C. M. & R. 565 ; Byles on Bills (Sharswood's ed.) 285 ; and remarks : " The earlier authorities were otherwise "—citing *Tensen* v. *Francis*, 1 Camp. 19 ; *Brown* v. *Davis*, 3 T. R. 80 ; 7 T. R. 429 ; Chitty on Bills, (13 Am. ed.) 347 ; Story on Bills, § 192 ; and, as opposing the doctrine of the text, *Hoffman* v. *Foster*, 43 Penn. 137 ; *Bower* v. *Hastings*, 12 Casey 285 ; *Chester* v. *Dorr*, 41 N. Y. 279 (overruling *Brown* v. *Mott*, 7 Johns. 361) ; *Battle* v. *Weems*, 44 Ala. 105.

And the same author, in section 786, in discussing the subject of " *accommodation paper*," says : " While it is the general rule that if the paper be overdue at the time of the transfer, that circumstance of itself is notice, and he can acquire no better title than his endorser, yet, if the endorser's title were

unimpeachable, the fact that the paper was executed for accommodation, without consideration, and that the endorsee knew it, is no defense even where the paper was overdue at the time of the endorsement, it being considered that parties to accommodation paper hold themselves out to the public, by their signatures, to be bound to every person who shall take the same for value, to the same extent as if paid to him personally. If the holder received the paper after maturity from an endorser, who took it *bona fide* before maturity, there is no question as to his right to recover; but if he takes it after maturity, from the party for whose accommodation it was made, endorsed, or accepted, there is conflict of decision on the subject." Citing *Chester* v. *Dorr, supra,* and *Coghlin* v. *May,* 17 Cal. 506.

The text-writers above referred to agree in their statement of the general rule, in respect to negotiable paper for value, in the following cardinal propositions :

1st. That a negotiable note may be transferred at any time while it remains a good, subsisting, unpaid note, whether before or after maturity ; and, in the latter case, even though it be protested for non-payment, and bear upon its face the stamp of dishonor.

2d. That payment of a dishonored note by an endorser does not extinguish its negotiability, though it discharges the liability of subsequent endorsers, whose liability will not be revived by his putting the note again in circulation.

3d. That though a negotiable note may be transferred as well after as before it becomes due, the rights of the endorsee are very different in the two cases.

4th. That in the case of a transfer of a note before it becomes due to a *bona-fide* holder for value, he takes it free of all equities between the antecedent parties of which he has no notice ; and that such holder often acquires a better right than that of the endorser under whom he claims.

5th. That in the case of a transfer of an overdue note, the holder takes it as a dishonored note, subject to all the defenses and equities to which it was subject in the hands of his immediate endorser, whether he has any notice thereof or not; such holder takes nothing except the title and right of his immediate endorser.

The same authors substantially agree in their statement of the exception, as respects accommodation paper, to the general rule, above stated, in regard to negotiable paper for value; but they do not agree so well as to the extent and application of the doctrine of said exception.

In 1st Daniel on Neg. Insts., § 786, above quoted, important limitations to the doctrine in respect to accommodation paper are recognized, which seem to be ignored in the broad and sweeping statement of the same doctrine made by Judge Moncure in *Davis* v. *Miller, supra.*

In that case, after first stating the general rule, as above, the learned judge says: " An exception exists in the case of an accommodation note, which is said, in general, to be governed by the same rules as negotiable paper for consideration."

This language would seem to indicate that, subject to exceptions not enumerated, the general rule applies as well to accommodation notes as to notes for value; but this statement is immediately followed by the following broad and apparently inconsistent statement: " So that a *bona-fide* endorsee of such a note," (that is, accommodation note,) " whether before or after maturity, and though knowing it to be an accommodation note, may enforce it against the prior parties. In that case an endorsee of an overdue note acquires a right, though the endorser under whom he claims has none."

This unqualified statement of the doctrine would seem to go to the unreasonable extent of giving to the endorsee of an overdue note the right to recover against the antecedent

parties, when his immediate endorser is the person for whose accommodation the note was made, and when such endorser had paid off and taken up the note at maturity. And it is this view of the doctrine, as stated by Judge Moncure, upon which counsel for the appellees rely to uphold the decree of the court below sustaining the demurrer and dismissing the bill. Such is not the law of this state, and has never been so held. In this connection it is proper to call attention to the fact that in *Davis* v. *Miller* no question was involved touching accommodation paper in any way; so that Judge Moncure's statement of the doctrine in question can only be treated as a passing notice of the exception to the general rule.

It is not unfrequently the case that the endorsee, or transferee, of accommodation paper, as well as of paper for value, has the right to hold the prior parties liable to him; as, for instance, where his immediate endorser took the paper for value before maturity, and, after maturity, transferred it to the holder. Accommodation paper, as well as paper for value, continues to be negotiable until it is paid off or discharged. Hence, in 1st Daniel on Neg. Insts, § 786, it is said: " While it is the general rule that if the paper be overdue at the time of the transfer, that circumstance of itself is notice, and he " (the endorsee) " can acquire no better title than his endorser, yet, if the endorser's title were unimpeachable, the fact that the paper was executed for accommodation, without consideration, and that the endorsee knew it, is no defense, even where the paper was overdue at the time of the endorsement," &c.

· This statement materially limits the doctrine as stated by Judge Moncure in *Davis* v. *Miller*. The same author, in the same section, says: " If the holder received the paper " (accommodation paper) " after maturity, from an endorser who took it *bona fide* before maturity, there is no question as to his right to recover ; but if he takes it after maturity, from the party for

whose accommodation it was made, endorsed, or accepted, there is conflict of decision on the subject," &c.

Reference has already been made to the authorities favoring, and to those opposing, the doctrine; and it is safe to say, especially in view of the later English decisions on the subject, that the decided weight of authority is opposed to the doctrine. The doctrine gained a temporary footing in New York, but was overruled in *Chester* v. *Dorr, supra;* and the fact that the doctrine does not obtain in that great commercial state is of itself a potential argument against its soundness.

But, independently of all that has been said, the doctrine itself, so far from upholding the integrity and ready circulation of commercial paper, strongly tends to suppress a large class of such paper, and to ruinously cripple commercial transactions. Accommodation paper, without consideration, is a most important factor in the commercial world. Such paper crowds every avenue of commercial enterprise. Why, then, subject the makers, endorsers, or acceptors of such paper to this species of outlawry, by denying to them the defenses guaranteed to the makers, endorsers, and acceptors of negotiable paper for value?

We know of no sufficient reason upon which to found any such doctrine, nor do we believe the ingenuity of man can suggest one. The reason, and the only reason, given in the books is, that it is " considered that parties to accommodation paper hold themselves out to the public, by their signatures, to be bound to every person who shall take the same for value, to the same extent as if paid to him personally." This is no reason whatever for the distinction, as precisely the same reason is applicable to the parties to paper for value.

It will be found, on examination, that this exception, as respects accommodation paper, to the general rule, rests almost exclusively upon the authority of the three English cases of *Charles* v. *Marsden, Sturtevant* v. *Ford,* and *Caru-*

*thers* v. *West, supra ;* and that the doctrine is comparatively modern in that country, and was transmitted to us upon the authority of the same cases. It will also be found that the doctrine, as stated by Judge Moncure in *Davis* v. *Miller,* is not fairly deducible from the decisions in either *Sturtevant* v. *Ford* or *Caruthers* v. *West,* the two English cases, and the only cases, referred to by him. Let us, then, briefly review the three English · cases, commencing ˙ with *Charles* v. *Marsden,* 1 Taunt. 224, decided in 1808. That was an action brought by the plaintiffs, as endorsees of a bill of exchange drawn by Atkinson, against the acceptor. The defendant pleaded that he had accepted the bill for the use and accommodation of Atkinson, and without any consideration whatsoever for the same, and that afterwards, and after the time when the bill became due and payable, Atkinson endorsed it to the plaintiffs, they well knowing, at the time of such endorsment, that it had been and was so accepted by the defendant for the use and accommodation of Atkinson, and that the defendant had not ever received any consideration whatsoever for the same. The plaintiffs replied (with a protestation of the insufficiency of the plea) that Atkinson ·endorsed the bill to them before the time when it became due, and not after, as the defendant had alleged ; and that, they prayed, might be inquired of by the country. The ·defendant demurred ; and assigned for cause that the replication concluded to the country, whereas, inasmuch as the plaintiffs had offered an issue only on one of the facts set forth in the plea, and not on all, they ought to have con- ·cluded their replication to the court, with a verification. The case turned on the question as to the sufficiency of the plea, and it was held that " it is not of itself a defense to an ·action by the endorsee of a bill of exchange to plead that it was accepted for the accommodation of the drawer, without consideration, and was endorsed over after it became due."

In other words, the court held that the *mere* fact that the bill was accepted for accommodation, and without consideration, did not preclude the endorsee's right of recovery. Surely, there is nothing in this upon which to ground the doctrine we have been combatting.

In *Sturtevant* v. *Ford*, decided in 1842, it was held that "a plea by the acceptor of a bill, to an action by the endorsee, that the bill was accepted before it became due, at the request and for the accommodation of J. S., and without any value or consideration for the acceptance, or for the payment, and that the bill was endorsed to the plaintiff after it became due, is bad." It is plain that this case simply followed the preceding case of *Charles* v. *Marsden.* In this case Tindal, C. J., said : " Upon these pleadings the plaintiff must be taken to be a holder for value, without notice of any defect in the title of his endorser. Upon the authority of the cases, without saying what would be my opinion if the question were *rès integra*, I think the plaintiff is entitled to judgment." And Creswell, J., said : " I am of the same opinion. Had this been *res integra*, I am not prepared to say that I should have come to the same conclusion. I should have thought it a case of doubt. By the law merchant an endorsement may give to the endorsee a better title than the endorser had. It is said that the endorsee of a bill which is overdue takes it subject to all the equities. Perhaps a better expression would be that he takes the bill subject to all *its* equities. That brings it to the question whether this is an equity which attaches *to the bill.* In *Charles* v. *Marsden* the court said that there was no reason why a bill should not be negotiated after it became due, unless there was an agreement for the purpose of restraining it."[1]

These remarks of the two judges referred to show—first, that, upon the principle *stare decisis*, they were enforcing a doubtful doctrine ; second, that an endorsee may take a better

title than his endorser had ; and, third, a bill or note may be
negotiated as well after as before maturity, provided there is
no agreement, express or implied, that it shall not be nego-
tiated after it becomes due. In other words, the remarks of
Tindal, C. J., and Creswell, J., apply, in general, for reasons
already stated, alike to paper for value and to paper for
accommodation, without consideration ; and, when rightly
interpreted, simply mean that negotiable paper may be
transferred so long as it remains unpaid, whether before or
after maturity. But neither of these judges, nor either of the
other judges who delivered opinions in the case, say anything
to warrant the doctrine of the alleged.*exception* to the gene-
ral rule, which so harshly discriminates against the makers,.
endorsers, and acceptors of accommodation paper.

And in the case of *Caruthers* v. *West,* 63 Eng. C. L. R. 143,.
the action was *assumpsit* on a bill of exchange drawn by
John Sewell, directed to defendant, for £30, value received,
payable to Sewell's order, two months after date (which
period had elapsed); and then accepted by the defendant, and
then endorsed by Sewell to George Barclay, who then endorsed
to plaintiff; averment of notice to defendant and promise by
him to plaintiff to pay according to the tenor and effect of the
bill, acceptance, and endorsements. *Plea*—that defendant
accepted the bill, " at the request and for the accommodation
of " J. Sewell and George Barclay, " and without any value
or consideration whatever ; and there never was any value or
consideration for the said acceptance " by defendant; and
" defendant so accepted the same upon the terms and condi-
tion that the same might be endorsed and negotiated for the
accommodation and use of J. Sewell and G. Barclay only
before the same became due and payable, and not afterwards."
That the bill was endorsed to plaintiff " without the consent,
privity, or default of " the defendant, after the same became
due and payable, and not before that time ; and that plain-

tiff " did not become the holder" of the bill, " or entitled to the same, or to any interest or property therein, until after it so became due and payable." *Held* a bad plea, on motion for judgment *non obstante veredicto.*

It is obvious that these cases do not go to the extent of the *exception* to the general rule, as stated by Judge Moncure in *Davis* v. *Miller*, *supra*. On the contrary, they decide, and only decide, that the mere fact that negotiable paper is made, drawn, endorsed, or accepted for accommodation, and without consideration, does not constitute a valid defense to an action by the holder on such paper; or that, as was said by Lord Ch. J. Mansfield, in *Charles* v. *Marsden*, *supra*, " it is not necessarily to be inferred, because it was an accommodation bill, that there was an agreement not to negotiate it after it became due," &c.; thus conceding that where there is such an agreement it will constitute a valid defense. And the same principle is recognized in the cases of *Sturtevant* v. *Ford* and *Caruthers* v. *West*, *supra*. It is obvious that these English cases do not sustain the argument of counsel, based on the *exception* to the general rule, as stated by Judge Moncure, that the case in hand falls within the alleged exception from the fact that the notes in question, being accommodation notes, the parties thereto are bound to the appellee, Charles T. Watkins, the transferee, after maturity, of Joseph F. Cottrell, the person for whose accommodation the notes were made, and when he had paid them at maturity—and this upon the bare supposition that the parties to the notes in question hold themselves out to the public, by their signatures, to be bound to every person who shall take the same for value, to the same extent as if paid to him personally, even though the notes were overdue when taken by the appellee, Charles T. Watkins, and with knowledge that they were accommodation notes, and had been paid, at maturity, by Joseph F. Cottrell, for whose accommodation they were made, endorsed, and

passed to said Clover Hill Railroad Company in discharge of the debt due it by said Joseph F. Cottrell. Such certainly is the effect of the argument, especially in the light of the case stated in the bill, the facts therein stated being, on demurrer, taken and admitted to be true. The contention is opposed to both reason and authority, and cannot be upheld.

In 1st Daniel on Neg. Insts., § 726, it is said, *inter alia :* " If the accommodation bill or note had been paid at maturity, then the position of the purchaser would be altered, for a defense is then established which goes to the merits of the case."

After, in previous sections, discussing the equities which may or may not attach to a bill or note in the hands of a transferee, after maturity, in section 180, Story on Prom. Notes, it is said : " But there is a period when promissory notes cease altogether to be negotiable, in whosesoever hands they may then be, so far as respects the antecedent parties thereto, who would be discharged therefrom by the payment thereof."

Let us now look to two English cases, decided long after *Sturtevant* v. *Ford* and *Caruthers* v. *West, supra,* and which stand opposed to the doctrine of those cases, and support the doctrine of the text-writers last above quoted.

In *Lazarus* v. *Cowie,* 3 Adolph & E. (N. S.) 458, 43 Eng. C. L. R. 819, decided by the court of Q. B. in 1842, to a declaration on a bill of exchange, by endorser against acceptor, the plea was that the acceptance was for the accommodation of the drawer, and without any consideration ; that before the endorsement to the plaintiff the drawer negotiated the bill for his own use, and paid it when due, whereupon it was re-delivered to him ; and that, after it was due, the drawer endorsed it to plaintiff, without it being re-stamped, or payment of any duty in respect of the re-issuing ; and that plaintiff, before and at the time of the endorsement to him, had notice of the premises. *Held,* on special demurrer : 1st.

That payment by an accommodation drawer being equivalent to payment by an accommodation acceptor, the bill, when re-issued, was in law a new bill, and required a fresh stamp. 2d. That, inasmuch as stat: 55, G. 3d, ch. 184, sec. 19, expressly prohibits the re-issuing a bill of exchange which has been paid, and inflicts a penalty on any person doing it, the defense was available by plea.

In *Parr* v. *Jewell*, 32 Eng. L. & E. R. 394, decided by the court of C. P. as late as 1855, it was expressly decided that " it is a good defense to an action by an endorsee against the acceptor of a bill of exchange, that it was accepted for the accommodation of the drawer, without consideration, and that it was endorsed over by the drawer after it had been paid by him at its maturity."

In the light of these authorities, and in the light of reason and justice, there is no foundation for the argument of counsel in behalf of the appellee, Watkins, nor for the *exception* to the general rule upon which that argument is based.

The appellee, Watkins, knows how he came by the notes in question—whether he got them in a fair transaction or not; but, instead of answering the bill and exposing his claim to the light of day and all the surrounding circumstances, he seeks to screen his conduct, in this most suspicious transaction, by the technical defense of a demurrer.

It has been well said : " Courts of equity are apt, and with reason, to look with a suspicious eye upon defendants who, by availing themselves of every cause of demurrer or plea, show an unwillingness fairly to meet the plaintiff's case. It is seldom, therefore, advisable to have recourse to these modes of defense, unless to prevent the expense of an examination of witnesses, or to avoid a discovery which might be detrimental to the defendant's just and rightful interests." Under the peculiar circumstances of this case, which strongly commend themselves to the favorable consideration of a court of

equity, the appellee, Watkins, if he had a just and rightful claim to the notes in question, could hazard nothing by answering the bill and asserting that claim in the broad light of day. If he has no such claim, he should not be permitted to reap good results from an unconscionable and fraudulent transaction. The Cottrell brothers and the appellee, Watkins, seem to have lived near each other—practically in the same neighborhood—and it is but fair to infer that said appellee had full knowledge of the fact that the notes were made for the accommodation of Joseph F. Cottrell, and had been paid by him at maturity, and that the debt was thereby extinguished, and the purpose accomplished for which said trust deed was executed. If the appellee, Watkins, instead of procuring a sale under said trust deed, by falsely and fraudulently representing to the trustees that he was the legal holder of the notes, and that they remained unpaid, had brought suit on the notes, it is unquestionably true that the facts stated in the bill would have constituted a good defense to such action. We are, therefore, clearly of opinion that the court, by its decree of December 1st, 1891, erred in sustaining the demurrer of the defendants to complainants' bill, and that said decree must be reversed and annulled.

We are also of opinion that the decree rendered on a subsequent day of said term—to-wit, on the 18th day of December, 1891—is also erroneous, and must likewise be reversed.

As already stated, the court below, after sustaining the demurrer to the original bill, as amended, not upon the grounds suggested and urged by counsel, but upon the very singular ground, considering the circumstances of the case, of *laches,* and having thereby taken the plaintiff, John W. Cottrell, completely by surprise, he, on said subsequent day of the same term, moved the court to set aside said decree of a former day of said term, and to allow him to file his second amended bill, then tendered to the court. In the amended bill

so tendered and refused by the court, and which, by the order of refusal, was made a part of the record, the plaintiff, John W. Cottrell, in the most satisfactory manner, explains everything savoring of *laches* and acquiescence, and why he did not resist the sale made by said trustees. Under the peculiar circumstances, it was manifestly the duty of the judge of the court below to grant the motion of the plaintiff to set aside said decree of December 1st, 1891, and to allow him to amend his bill as aforesaid. But the court refused the motion, and, in so doing, plainly erred, all the circumstances being considered.

For the reasons aforesaid, we are of opinion to reverse and annul both of the decrees appealed from—to-wit, the said decree of December 1st, 1891, and the said decree or order of December 18th, 1891—and to remand the cause to said circuit court, with instructions to allow the appellant, John W. Cottrell, to further amend his bill, and for further proceedings in accordance with the views expressed in this opinion.

DECREE REVERSED.