[S. F. No. 11110. In Bank.—March 1, 1926.]

## THE FIRST NATIONAL· BANK OF REEDLEY, Appellant, v. E. R. REED, Respondent

[1] NEGOTIABLE INSTRUMENTS—AGENCY—KNOWLEDGE OF BANK CASHIER—COMMUNICATION TO PRINCIPAL—EVIDENCE—ASSUMPTION.—In the absence of any evidence on the point, it will be assumed that an officer of a bank, who, as cashier and manager thereof, had general charge of the business, communicated to his principal his knowledge of any facts material to a transaction whereby said officer secured from a certain individual a promissory note in favor of the bank to cover an overdraft of a third party.

[2] ID. — ACCOMMODATION MAKER — AGREEMENT OF NONLIABILITY. — Where an individual executes and delivers his promissory note to a bank, as an accommodation to the bank, upon the assurance of the cashier and manager thereof that he will never be called upon to pay the same, and no rights of innocent third parties intervene, said individual cannot be held liable on said note in a suit in which the bank is plaintiff.

[3] ID.—COLLUSION BETWEEN AGENT AND THIRD PARTY—KNOWLEDGE IMPUTED TO PRINCIPAL.—The general rule imputing to the principal the knowledge of the agent is subject to the exception to the effect that, if the agent and the third party are acting in collusion to defraud the principal, the principal will not be held bound by the knowledge of the agent; but such exception has no application to a situation wherein the principal is seeking to establish the liability of said third party.

[4] ID.—AGREEMENT OF CASHIER—LIABILITY OF BANK.—Where the sole representative of the bank, in obtaining from a certain individual a promissory note to cover an overdraft of a third party, is the cashier and acting manager of the bank, the bank cannot claim anything except through him, and if it claims through him, it must accept his agency with its attendant notice of his knowledge of the facts as they actually existed; and where the cashier takes the note upon the express understanding that the maker is not to be held liable, the bank, if it relies upon said note, must take it with the terms upon which the cashier took it.

---

1. Knowledge of officer imputed to bank, notes, 36 Am. Dec. 198; 77 Am. Dec. 763. See, also, 4 Cal. Jur. 162; 3 R. C. L. 475.
2. See 19 Cal. Jur. 881; 3 R. C. L. 1137.
3. See 21 R. C. L. 843.
4. See 1 Cal. Jur. 782; 21 R. C. L. 923.

[5] ID. — MISTAKEN IMPRESSION OF PRINCIPAL — TRANSMUTATION OF CONTRACT.—In such case, the contract must exist as made between the cashier and the maker of the promissory note, or not at all; and the fact that the bank was mistakenly under the impression at the time the cashier made the contract that it was of a certain nature cannot transmute the contract into the one the bank mistakenly thought had been made.

[6] ID.—INTENT TO DECEIVE BANK EXAMINER—ESTOPPEL TO DENY LIABILITY.—The fact that such promissory note is given with the purpose and intent to deceive the bank examiner will not estop the maker from asserting that it is not a valid obligation, provided the rights of innocent third parties are not involved.

(1) 7 C. J., p. 530, n. 71.   (2) 7 C. J., p. 529, n. 61.   (3) 2 C. J., p. 871, n. 17.   (4) 7 C. J., p. 529, n. 61.   (5) 2 C. J., p. 482, n. 44. (6) 21 C. J., p. 1139, n. 1.

APPEAL from a judgment of the Superior Court of Fresno County. J. E. Woolley, Judge. Affirmed.

The facts are stated in the opinion of the court.

Mark H. Edwards and Frank Kauke for Appellant.

Everts, Ewing, Wild & Everts for Respondent.

LENNON, J.—This is an action brought by The First National Bank of Reedley against the defendant, E. R. Reed on two promissory notes, each bearing date May 3, 1921, one for $11,000, the other for $440. The first note for $11,000 was in renewal of a note dated November 3, 1920, executed by the defendant Reed, the second note represented the accrued interest on the original note. The defendant by his answer admitted the execution of the notes but denied that the sums set forth in said notes were due or payable by the defendant, or any part thereof. The defendant, in addition, interposed a special defense which is clearly and succinctly stated in defendant's answer to plaintiff's complaint as follows:

"That more than three (3) months prior to the 3rd day of May, 1921, the said plaintiff had on its books an overdraft of the Reedley Canning Company, a corporation, for the sum of Eleven Thousand ($11,000) Dollars. That about three months prior to the 3rd day of May, 1921, a bank

examiner was in the bank and banking house of the said plaintiff in the City of Reedley for the purpose of making an examination of the books and accounts of the said plaintiff. That at said time and while said bank examiner was in said bank, the said overdraft of the said Reedley Canning Company for the sum of $11,000 was carried on the books of said plaintiff, that at said time and place and while the said bank examiner was in said bank for the purposes aforesaid, M. J. Wickstrom, who was then and there the cashier and Vice-President of the said plaintiff, met defendant and then and there requested defendant to make and deliver to said plaintiff his promissory note for $11,000 in favor of said plaintiff so that the same might be applied to and cover the said overdraft and that the said M. J. Wickstrom then and there stated to defendant that the said plaintiff would guarantee defendant against loss which might be sustained by reason of the making and delivering of said promissory note. That the said M. J. Wickstrom then and there stated and represented to defendant that the said bank had honored overdrafts of the Reedley Canning Company to the amount of about $11,000; that bank examiners were about to make an examination of the affairs of the bank; that the officers of the plaintiff were desirous of cleaning this account up and that they wanted defendant as an accommodation to the said bank to execute his note to the bank for $11,000 and that the said Reedley Canning Company would receive credit therefor and that it would be simply a temporary affair and that the bank would guarantee to protect defendant against loss by reason of giving the said note. That on the date of the delivery of said promissory note to said bank by said defendant, the said bank then and there credited the amount thereto, to-wit, $11,000 on the said overdraft of the Reedley Canning Company and the said bank retained the said note.

"That the defendant then and there believing the statements and representations made as aforesaid that the plaintiff would guarantee to protect him against loss by reason of giving said note and as an accommodation to the payee named in said note, did then and there make and deliver said note to plaintiff. Defendant alleges that he did not receive at said time or at any time any consideration for said note and was not given anything of value or credit therefor.

"That on the 3rd day of May, 1921, M. J. Wickstrom, who was then and there the cashier and Vice-President of the said plaintiff, stated and represented to defendant that the bank had not been able to raise funds to replace defendant's note and then and there requested plaintiff to execute a new note in the sum of $11,000, also another note in the sum of $440; that if defendant executed and delivered to plaintiff the two notes just described, that the bank would deliver to defendant the original note for $11,000. The said M. J. Wickstrom then and there stated and represented to defendant that it was necessary for the bank to carry these notes because the bank had not been able to raise the $11,000, the amount of the overdraft of the Reedley Canning Company, that the said M. J. Wickstrom represented then and there and stated to defendant that the plaintiff would guarantee the defendant against loss which he might sustain by reason of making delivery to said bank of said promissory notes; that the bank needed said notes as an accommodation and that he would not look to defendant for the payment of said notes or either of them and that the said bank would guarantee to protect defendant against any loss by reason of giving the said note.

"That the said defendant then and there believing the statements and representations made as aforesaid that the plaintiff would guarantee to protect him against loss by reason of giving said notes and as an accommodation to the payee named in said notes, did then and there make and deliver said notes to the said plaintiff; defendant alleges that he did not receive at the time of the delivery of said notes or at any other time any consideration for said notes and was not given anything of value or credit therefor."

Upon the issues thus raised the cause was tried before the court without a jury. The court found that there was no consideration for the notes and rendered judgment in favor of the defendant, from which judgment the plaintiff has prosecuted this appeal. It is plaintiff's contention that (1) the findings are not supported by the evidence and (2) the defendant is estopped to assert that there was no consideration for the notes.

A review of the record before us clearly shows that the defendant's statement as to the facts and circumstances surrounding and attending the original execution of the note

for $11,000 in November, 1920, and the renewal thereof, together with another note for accrued interest, in May, 1921, is amply supported by the evidence.

At the time of the original execution of the note many persons living in the vicinity of Reedley were interested in the success of the Reedley Canning Company as a community enterprise, and were stockholders in said company. Mr. J. J. Eymann, the president of the plaintiff bank, was a stockholder in the canning company, as was also Mr. Krehbiel, a director of the bank. Mr. Wickstrom, cashier and manager of the plaintiff bank, was a stockholder to the extent of $11,000, and Mr. Reed, the defendant, owned stock in the company to the extent of $2,500. On November 3, 1920, the canning company had overdrawn its account with plaintiff's bank to the extent of $11,000, which was in excess of the credit which plaintiff might under the law extend to any one person or corporation. On that date a national bank examiner commenced an examination of the affairs of the bank. The bank had been previously criticised by reason of the amount of its overdrafts, and, in the words of Mr. Wickstrom, cashier of the bank, "the overdraft had to be covered." "It was illegal . . . and had to be taken care of." Mr. Wickstrom, on opening up the bank that morning, saw Mr. Reed out in front of the bank and spoke to Mr. Eymann, president of the bank, of the possibility of getting Mr. Reed to sign a note until such time as stock in the canning company could be sold to take care of the note. Mr. Eymann said it was a "mighty good idea," and Mr. Wickstrom went out and asked Mr. Reed to execute his note in the sum of $11,000. Mr. Reed, so Mr. Wickstrom testified, "had always been an awful good friend of mine, all my life, and I usually got all I wanted out of him." According to Mr. Wickstrom's own testimony he explained to Mr. Reed that the bank needed a note for $11,000 to cover the overdraft while the bank examiner was there, and assured him that he would not have the note to pay, that it was simply an accommodation note to help the bank out. Mr. Wickstrom explained to Mr. Reed that the bank could take care of the note by selling subscriptions to stock in the canning company. Mr. Krehbiel, a director of the bank, was also in the bank on the morning that the bank examiner was there, but the entire negotiations with regard to the execu-

tion of the note were carried on between Mr. Reed and Mr. Wickstrom, cashier and manager of the bank, on the sidewalk in front of the bank. Mr. Reed testified that although he understood that his note was to cover an overdraft of the Reedley Canning Company, he had no intention or thought of loaning his credit to the canning company, but gave the note as a matter of favor to the bank, and gave it upon the express promise of the cashier that the bank would take care of the note and that he would not be out on it whatever.

That Mr. Reed had no intention of loaning his credit to the canning company is substantiated by the testimony of Mr. George H. Rogers, the manager of the canning company, who testified that on the same day, before the execution of the note, the cashier of the bank stated to him (Rogers) that Reed was about to execute his note to cover the overdraft of the company, and requested Rogers to transfer to the bank as security therefor certain stock of the canning company owned by Rogers, and that Reed at that time stated to the cashier, "I don't want the stock. If you want the stock it is up to you. I am doing this for the bank and not for the canning company. It is an accommodation note." Mr. Rogers also testified that later in the day he brought into the bank, as security, stock in the canning company to the extent of $45,000. Upon the execution of the note credit was entered to the account of the canning company on the books of the bank for $11,000.

Mr. Reed testified that prior to the execution of the second notes in renewal of the first he had asked Mr. Wickstrom for his original note back but that Mr. Wickstrom had said that it was impossible at the time because they were still carrying overdrafts and wanted that note to cover them.

Mr. Reed further testified that in May, 1921, Mr. Wickstrom again approached him on the street and said that the bank examiner was liable to be there at any time and that the original note was overdue and he would like to have him renew it under the same conditions, at the same time positively assuring him that the bank would take care of it, and that he would not be out on it whatever.

The canning company became insolvent and suit was instituted by the bank against the defendant for the recovery upon the two promissory notes.

The respondent contends that the facts present in this case bring it within the application of the rule laid down by this court in *Bank of Orland* v. *Harlan,* 188 Cal. 413 [206 Pac. 75]. The evidence might well support a finding that would bring the case within the rule there laid down, but we deem it unnecessary to consider it from the point of view there suggested because of the finding of the trial court that respondent "received no consideration whatever for said promissory note and it is true that there was no consideration whatever for the making or delivery of said promissory note."

The appellant suggests that the cashier, Wickstrom, had no authority to bind the bank in the negotiations with Reed as to the purpose for which the note was executed.

It is admitted by the plaintiff that if the sole purpose on the part of the plaintiff in taking the note was to cover up a deficit in the bank's assets and deceive and mislead the bank examiner, then, notwithstanding the fact that defendant participated with the bank officers in a fraudulent transaction, the court would not aid either party, and the plaintiff could not recover. But it is insisted that the directors of the bank had no knowledge of the criminal nature of the transaction and believed that the giving of the note was a strictly legitimate transaction.

[1] Respondent testified that Wickstrom was vice-president and manager of the bank. Wickstrom himself testified that he was, at various times, vice-president, manager, and cashier of the bank, and that he acted as such cashier or manager could. He was such cashier at the time the original note in this transaction was executed. Appellant concedes in its brief that Wickstrom was "cashier and manager" of the institution. The evidence justifies the assumption that, as such cashier, he had general charge of the business of the bank as such cashier and manager. In the absence of any evidence on the point, it would be assumed that Wickstrom communicated to his principal his knowledge of any facts material to the transaction. (*McKenney* v. *Ellsworth,* 165 Cal. 326 [132 Pac. 75].) [2] Wickstrom testified that he explained to the board of directors of the bank "how the note was taken, and how it was to be taken care of." Both he and the respondent testified that Reed executed the note as an accommodation to the bank, upon the

assurance of Wickstrom that·Reed would never be called upon to pay the same. The party for whose accommodation such a paper is made may not sue the accommodation party. (*Williams* v. *Hasshagen*, 166 Cal. 386, 390 [137 Pac. 9]; *Coghlin* v. *May*, 17 Cal. 515.) Mr. Wickstrom testified that both Mr. Eymann, president of the bank, and Mr. Krehbiel, one of the directors, were present on the morning of the execution·of the note and knew that the bank examiner was there. Mr. Wickstrom also testified that he explained to the directors at a meeting subsequent to the taking of the note that the note "was taken to cover an overdraft of the Reedley Canning Company to be taken care of by stock subscriptions, as the stock was sold, the note brought into the bank and placed to the credit of the cannery, *or used otherwise whatever we saw fit to use them,* and it was explained to the Board of Directors." Mr. Wickstrom could not remember, however, directly telling the directors that the note of Mr. Reed .was for the accommodation of the bank and that Mr. Reed was not to be held liable.

[3] It is also insisted by plaintiff that the knowledge of the cashier could not be imputed to the principal—in this case the bank—for the reason that this rule was established for the protection of those who deal with the agent in good faith. It is true that there is an exception to the general rule imputing to the principal the knowledge of the agent, which exception is to the effect that if the agent and the third party are acting in collusion to defraud the principal the principal will not be held bound by the knowledge of the agent. Obviously, the purpose of this exception is to protect the innocent principal against the fraud of his agent acting in collusion with the third person. It is to be noted that the exception to the rule is ordinarily applied in cases where the liability of the principal to a third person is involved and is based upon the idea of protection to the innocent principal.

The exception, holding as it does that the principal is not bound by the knowledge of his agent, has no application to a situation such as presented here, wherein the principal is seeking to establish the liability of a third person. [4] In the situation presented here the sole representative of the bank was the cashier and acting manager. The bank cannot claim anything except through him, and therefore, if it

claims through him, it must accept his agency with its attendant notice of his knowledge of the facts as they actually existed.  The bank cannot in one breath be heard to say that the cashier was without authority to bind itself as its agent and accept the note upon condition that it was an accommodation note for which the defendant should not be liable, and in the next breath insist that it can avail itself of his act in taking the note.  It cannot avail itself of only so much of the transaction as was beneficial to it and repudiate the rest.  If it relies upon the note, it must take it with the terms upon which the cashier took it, namely, that the defendant should not be responsible.  The bank must take the burden with the benefits and by demanding performance of the contract, the bank assumes responsibility for the instrumentalities—that is to say, the representations, promises and conditions—through which the act was induced.  The law is well settled that, in case a principal seeks to recover upon a contract in which the agent exceeds his authority, he must take the contract as a whole. (1 Mechem on Agency, 2d ed., sec. 448; *Central Bank of Bingham* v. *Stephens,* 58 Utah, 358 [199 Pac. 1018]; *Simmons* v. *Thompson,* 29 App. Div. 559 [51 N. Y. Supp. 1018].)

[5]  The fact that the principal was mistakenly under the impression at the time the agent made the contract with the third person that the contract was of a certain nature, cannot transmute the contract made between the agent and the third person into the contract which the principal mistakenly thought had been made.  The contract must exist as made between the agent and the third person, or not at all.

It follows, from what we have said, that Reed having given his note with the express understanding with the cashier and manager of the bank that he would not be called upon to pay the note, he cannot now in a suit wherein the bank is plaintiff, and no rights of innocent third parties intervene, be held liable.  The finding of the trial court that there was no consideration for the note, based as it undoubtedly was upon the theory that Reed had loaned his credit to the bank and not the canning company, is correct and supported by the evidence.

[6] We find no merit in plaintiff's contention that the defendant having given his note with the purpose and intent to deceive the bank examiner, he is now estopped to assert that it is not a valid obligation. Those cases which hold that he is so estopped are distinguishable from the instant case. Those cases present situations wherein the bank became insolvent, wherein the rights of innocent third persons were involved, or wherein a consideration for the note was expressly found. The plea of estoppel is primarily for the protection of innocent third persons who would suffer injury if the defendant were permitted to set up the true state of facts. Estoppel cannot be relied upon to create a liability in a situation where, as here, the agent, acting solely for the benefit of his principal, actively participated in the deceit and fraud and solicited the act from the person sought to be estopped by the principal.

The judgment is affirmed.

Waste, C. J., Shenk, J., Richards, J., Lawlor, J., Curtis, J., and Seawell, J., concurred.