Wilhoit v. Seavall.

No. 26,652.

J. C. WILHOIT (Revived in the name of ETHEL JULIA WILHOIT, Executrix, and Sole Devisee and Legatee of the Estate of J. C. WILHOIT, Deceased), *Appellant,* v. C. A. SEAVALL and CHARLES HENRY, *Appellees.*

### SYLLABUS BY THE COURT.

1. BILLS AND NOTES—*Conditional Delivery—Admissibility of Parol Evidence.* As between the immediate parties and as regards a remote party other than a holder in due course, the delivery (of a promissory note) may be shown to have been conditional or for a special purpose only. (R. S. 52-216.)

2. SAME—*Holder in Due Course—Purchaser After Maturity—Effect of Collateral Agreement.* S. & H. executed to a bank for its accommodation and without consideration a note due thirty days thereafter with the agreement that it should be returned to them at maturity. Upon request for its return, the officers of the bank stated that the note could not be found. Three months thereafter the bank failed, and a year thereafter the note was indorsed and sold to one of the bank's directors in violation of the agreement with the makers. In an action to recover thereon, *held,* the purchaser after maturity took the note subject to the equities between the original parties thereto.

3. SAME—*Accommodation Paper—Admissibility of Evidence to Show Accommodated Party.* Further, the proceedings considered and held parol evidence was admissible to show that the note was executed for the accommodation of the bank rather than the payee whose name appeared therein.

4. SAME—*Accommodation Paper—Sufficiency of Evidence.* Further, the evidence considered and held sufficient to support the finding that the note was in fact executed for the accommodation of the bank for thirty days, and delivery of the note a year after its maturity was a violation of the agreement under which it was delivered to the bank.

5. SAME—*Instructions.* The instructions considered and held not to have been erroneous.

6. SAME—*Generally.* Various assignments of error considered and held not to require a reversal.

Appeal from Riley district court; FRED R. SMITH, judge. Opinion filed June 12, 1926. Affirmed.

*Alvin Springer, Walter R. Gage,* both of Manhattan, *A. E. Crane* and *B. F. Messick,* both of Topeka, for the appellant.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt, V. V. Scholes,* all of Topeka, *Hal E. Harlan* and *A. M. Johnston,* both of Manhattan, for the appellees.

Bills and Notes, 8 C. J. pp. 254 n. 76, 264 n. 82, 738 n. 82, 760 n. 30, 1034 n. 46, 1045 n. 90, 1049 n. 23; 18 L. R. A. n.s. 288; L. R. A. 1917C, 306; 20 A. L. R. 421; 3 R. C. L. 862.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover on a promissory note. The defense was that the note was without consideration, had been executed for the accommodation of the Citizens State Bank of Manhattan, was to be returned in thirty days, and that it had been diverted from its original purpose more than a year after its maturity. J. C. Wilhoit, the original plaintiff, died while the case was pending, and the action was revived by his executrix, who was sole legatee and devisee. Trial to a jury, on controverted facts, resulted in a general verdict for defendants, with no special findings. The plaintiff appeals.

The plaintiff claimed and there was evidence tending to show that the Citizens State Bank had held a $7,000 note signed by A. E. Irish and C. A. Seavall; that Seavall had signed the note as an accommodation to Irish; that Irish, Henry and Seavall were in the bank at the same time, on May 7, 1920; that the $7,000 note was taken up and a new one was executed by them, signed by Seavall and Henry, and payable to Irish; that Irish indorsed it to the bank, that the three had a conversation with S. J. Pratt, president of the bank, at that time; and that after the note was signed it was placed with the assets of the bank.

The defendants claimed, and there was evidence tending to show, that while the note on its face was payable to Irish, that when it was executed Irish was not present and nothing was said with reference to its being for his accommodation, but that the president of the bank asked the defendants to give the note to the bank as an accommodation for thirty days; that it would be returned to them at the end of that time; that they read the note hurriedly, saw the printed words "The Citizens State Bank," and thought the note ran to the bank as payee; that after the note had matured, its return was requested, but the officers of the bank said they could not find it; that about a year after its maturity, Wilhoit, who was a director of the bank, purchased from the bank $38,000 of paper for $25,000; that sixteen months after the maturity of the note he exchanged some of the notes he had previously purchased for the one in controversy; that nothing was ever said by the officers of the bank to the defendants about the note after its execution; and that no attempt was made to collect it by the bank. There was also testimony that when Seavall signed the original $7,000 note with Irish,

that Irish turned over to Seavall other commercial paper amounting to $8,700, and that four or five days before the execution of the note in controversy Seavall returned the $8,700 of paper which he had received from Irish, at which time the bank delivered to Seavall the $7,000 note.

The plaintiff contends that the court erred in admitting evidence of the oral agreement between the defendants and the president of the bank and in instructing the jury that such agreement was a defense; that there was no fraud in the execution of the note, and that the plaintiff was entitled to a directed verdict. She also argues that the maker of a note cannot defend an action thereon by showing an oral agreement made at the time of its execution to the effect that he should not be held liable, for the reason that to allow him to do so would be to violate the rule forbidding the introduction of evidence to vary the terms of a written instrument.

The plaintiff cites, among other cases, *Naef v. Potter*, 226 Ill. 628, a case involving an accommodation note given to the payee for use as collateral to a note held by the bank. The court said that the transferee, after maturity of an accommodation note, takes it stripped of all defenses which may have existed against it. It is said, in Brannan's Negotiable Instruments Law (3d ed., p. 126), that this was "a case upon an instrument made before the adoption of the negotiable instruments law." The court, without citing any cases on the point, held that the transferee after maturity, with knowledge of the fact of accommodation, but without knowledge of the agreement not to negotiate the instrument after maturity, could nevertheless recover against the accommodating party. It would now be otherwise in Illinois, since section 29 (Neg. Inst. Law), as adopted in Illinois, has an additional clause which restricts the transfer after maturity to cases where there is proof that "a transfer after maturity was intended by the accommodation party." (See, also, *Corrigan v. Harris*, 207 Ill. App. 291. Also note in 11 L. R. A., n. s., 1037, where a digest of cases may be found.)

Plaintiff cites various authorities to sustain her general contention (*Van Fossan v. Gibbs*, 91 Kan. 866, 139 Pac. 174; *Stevens v. Inch*, 98 Kan. 306, 158 Pac. 43; *Bank v. Paper Co.*, 98 Kan. 350, 158 Pac. 44; *Investment Co. v. Gamble*, 102 Kan. 791, 171 Pac. 1152; *Trust Co. v. Danforth*, 103 Kan. 860, 177 Pac. 357; *Underwood v. Viles*, 106 Kan. 287, 187 Pac. 881; *Bank v. Pirotte*, 107 Kan. 573, 193 Pac. 327; *Bank v. Coerber*, 113 Kan. 498, 215 Pac.

285), which are not applicable to the facts here. For instance, she relies on the case of *Bank v. Watson*, 99 Kan. 686, 163 Pac. 637. The question there was whether the bank or one Blitz was the accommodated party. It was determined that Blitz was the accommodated party rather than the bank. It was there said:

"The note was not executed to enable the bank to obtain money from some one else, but to enable Blitz to obtain more money from the bank. The defendant's credit was not lent to the bank, but to Blitz, the effect of the transaction being to enable him to borrow upon the credit of the defendant after the credit which the bank under the law could extend to him had been exhausted. The circumstance that the bank was desirous of doing the business, and that the defendant was moved by friendship for the bank rather than for Blitz—by a desire to help the lender to earn interest rather than by a wish to aid the borrower in obtaining a loan—does not affect the legal relation of the parties. The situation is entirely different from that presented in *Means v. Bank*, 97 Kan. 748, 156 Pac. 701, where it was held that a bank was bound to protect the maker of a note executed to it, for its accommodation, the proceeds of which it received and retained. Here the money was lent to Blitz upon the strength of the note signed by the defendant, without which the loan could not have been made. The circumstance that the president of the bank told him that the loan was otherwise secured, and that he would not have to pay it, does not alter the fact that it furnished a consideration for the note." (p. 689.)

"The accommodated party is he to whom the credit of the accommodation party is loaned, and is not necessarily the payee, since the inquiry always is as to whom did the maker of the paper loan his credit as a matter of fact." (8 C. J. 254.)

In the instant case there was ample evidence to sustain the general finding of the jury that the bank and not Irish was the accommodated party. The general verdict necessarily included a finding that the note was executed for the accommodation of the bank without consideration, and with the agreement it should be returned to the makers at the end of thirty days.

The plaintiff cites *Evans v. Speer Hardware Company*, 65 Ark. 204, and *Nickerson v. Ruger*, 84 N. Y. 675. In both cases the paper was negotiated before maturity. *Marling v. Jones*, 138 Wis. 82—another case cited by the plaintiff—is criticized by Professor Brannan, dealing with section 29 of the negotiable instruments law, in an article in 26 Harvard Law Review, 493, quoted in Brannan's Negotiable Instruments Law (3d ed.), p. 122. In *Marlin v. Jones*, supra, however, there appears to have been no claim of diversion as in the instant case, the only claim being that an accommodation maker, where the paper was negotiated after maturity, could as-

Wilhoit v. Seavall.

sert the defense of no consideration.    The court in the Marling
case said:

"No doubt there exists a class of defenses in favor of the accommodation
maker of negotiable paper which may not be urged in cases where the note
is fair on its face and negotiated in due course before due to a purchaser for
value, without notice or knowledge of any infirmity, but which might be urged
in favor of the accommodation maker if the note were overdue when nego-
tiated.   But the fact that the accommodation maker received no consideration
is not one of these defenses so long as the note was negotiated by his express
or implied authority."   (p. 90.)

In the instant case the note was negotiated without the consent
of the defendants and contrary to the agreement found by the jury
to have existed between the parties.

In 1 Daniel on Negotiable Instruments (6th ed.), 828, it is said:

"If there was an agreement, express or implied, not to negotiate an ac-
commodation bill after maturity, the weight of authority is justly to the effect
that such agreement would constitute an equity attaching to it upon its
transfer after maturity."

In Joyce on Defenses to Commercial Paper, § 385, it is said:

"The maker of, or surety on, an accommodation note has the right to de-
termine what use shall be made of the same and may impose material or im-
material conditions or terms in regard to its use, and one who takes the paper
with knowledge of the terms and conditions imposed will be subject to the
defense that there has been a diversion of the instrument from the use con-
templated.   Thus, it is said that: 'If accommodation paper is given for a
particular purpose, and that purpose is known to the holder at the time it is
taken, a diversion of the paper from that purpose or misappropriation of it
will release the party giving the accommodation from all responsibility.'   And
such a defense is, as a general rule, available against all parties except one
who occupies the position of a *bona fide* holder."   (See, also, *Benjamin v.
Rogers*, 126 N. Y. 60; *McAdam v. Cooke*, 6 Daly, 101; *Rochester v. Taylor*,
23 Barb. 18; *The Olds Wagon Works v. The Bank of Louisville*, 10 Ky. Law
Rep. 235; *Thompson v. Poston*, 1 Duv. 389 [Ky.]; *Bowman v. Van Kuren*, 29
Wis. 209; *Quebec Bank of Toronto v. Hellman*, 110 U. S. 178.)

In *Cottrell v. Watkins*, 89 Va. 801, the court said:

"Accommodation paper, without consideration, is a most important factor
in the commercial world.   Such paper crowds every avenue of commercial
enterprise.   Why, then, subject the makers, indorsers, or acceptors of such
paper to this species of outlawry, by denying to them the defenses guaran-
teed to the makers, indorsers, and acceptors of negotiable paper for value?

"We know of no sufficient reason upon which to found any such doctrine,
nor do we believe the ingenuity of man can suggest one.   The reason, and
the only reason, given in the books is, that it is 'considered that parties to ac-
commodation paper hold themselves out to the public, by their signatures, to
be bound to every person who shall take the same for value, to the same ex-

tent as if paid to him personally.' This is no reason whatever for the distinction, as precisely the same reason is applicable to the parties to paper for value." (p. 817.)

The better reason favors the rule that the purchaser of an accommodation note after its maturity gets no better or greater right to enforce it against the maker or indorser than if it were ordinary negotiable paper given for value.

In *Osborn v. McClelland,* 43 Ohio St. 284, an action to foreclose a mortgage securing an accommodation note, it was shown that there was an agreement that the note and mortgage were to be held in the bank for thirty days, at the expiration of which time they should be returned. They were not returned, and after maturity of the note the bank, in violation of the agreement, indorsed it to McClelland. There, the court said:

"Under the terms of the loan by her, they (the bank) had express authority from her to use it temporarily, but not having exercised that authority their continued possession was permissive merely and as between her and the bank, without authority to use it. If, in violation of their trust, they had negotiated it to an innocent holder before due, the doctrine that where one of two innocent parties must suffer, the one that so acts as to give rise to the injury, rather than the one who is not to blame, should be the loser, would apply, but this has no application to the purchaser of an after-due negotiable instrument. In that respect the purchaser takes only the title which his transferor or indorser had." (p. 298.)

Many of the courts hold that the rule that one who takes a note after it is due takes it subject to the equities to which it is liable in the hands of him from whom he takes it applies to paper drawn, indorsed or accepted for accommodation. (*Bacon v. Harris,* 15 R. I. 599.)

"An indorser who acquires a note after maturity, takes it subject to all defenses existing in favor of the maker as against the payee or other party for whose accommodation it was made." (*Glasscock v. Smith,* 25 Ala. 474. See, also, *Chester v. Dorr,* 41 N. Y. 279; *Bacon v. Harris,* 15 R. I. 599; *Bower v. Hasings et al.,* 36 Pa. 285; *Peale v. Addicks,* 174 Pa. 549; *Kellogg v. Barton,* 94 Mass. 527 [12 Allen]; *Whitwell v. Crehore,* 8 La. 540; *Cummings v. Little,* 45 Me. 183; *Cottrell v. Watkins,* 89 Va. 801; *Osborne v. McClelland,* 43 Ohio St. 284; *Livermore v. Blood et al.,* 40 Mo. 48; *Battle v. Weems,* 44 Ala. 105; *Coughlin v. May,* 17 Cal. 515; *Simons v. Morris,* 53 Mich. 155; Note, 46 L. R. A. 753, and cases cited 773.)

In 2 Am. & Eng. Ann. Cas. 256, the annotator says:

"The decided weight of American authority, and apparently the sounder rule, is that a transferee from the party accommodated, taking accommodation paper after maturity, though he gives a valuable consideration therefor, takes

only his transferor's title, and has no higher right against the accommodation party than he would have in the case of the purchase of ordinary commercial paper under similar circumstances." (See, also, *Altoona Bank v. Dunn*, 151 Pa. St. 228; *Bowman v. Van Kuren*, 29 Wis. 209; *Brush v. Scribner*, 11 Conn. 388; *Rylee v. Wilkerson*, 134 Miss. 663; *Schlamp v. Manewal*, 196 Mo. App. 114.)

"The law recognizes the right of the accommodation party to impose any restrictions, conditions or limitations upon the paper that he sees proper. [1 A. & E. Encyc. of L., 2d ed., 393.]" (*Naef et al. v. Potter*, 226 Ill. 628.)

The note here in controversy was not only accommodation paper and negotiated after maturity, but it was negotiated in violation of the agreement made when it was given. (See *Riverside Bank v. Jones*, 78 N. Y. Supp. 325; *Coghlin v. May*, 17 Cal. 515; *Blenn v. Lyford*, 70 Me. 149; *Cottrell v. Watkins et al.*, 89 Va. 801; and *Mackay v. Holland*, 4 Met. 69.)

The plaintiff was not a holder in due course (R. S. 52-202) and necessarily took the note subject to all equities between the original parties. (R. S. 52-508.)

In *Rice v. Rice*, 101 Kan. 20, 165 Pac. 799, it was said:

"Although the terms of a written obligation, assumed to be valid, cannot be varied by parol, it may be shown by parol what caused the party thus to obligate himself, and thereby test the question whether he is legally bound, as the writing imports, or whether he is by any cause wholly or partially freed from liability thereon.

"In a foreclosure suit between the immediate parties to the note and mortgage, parol evidence is always admissible to show a failure of consideration or that the note and mortgage were given merely as accommodation to the payee." (Syl. ¶¶ 1, 2.)

In the opinion it was said:

"The negotiable-instruments law (Gen. Stat. 1915, § 6543) authorizes the testimony of which the plaintiff complains. It reads:

" 'As between immediate parties, and as regards a remote party other than a holder in due course, . . . the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument.' [R. S. 52-216.]

"The finding of the court that at the time of the delivery of the mortgage it was understood and agreed between the parties that the mortgage was to be used only for the accommodation of plaintiff in case he so desired, but otherwise was not to become of any force or effect as a lien upon the property, that it had not been so used but remained in the possession of the plaintiff at all times since, is a finding of the facts which brings the case within the section of the statute just quoted." (pp. 24, 25.)

In *National Bank v. Stroup*, 104 Kan. 11, 177 Pac. 836, this court said:

"It is further contended that the oral testimony of the things said and done by the officers of the bank for the purpose of showing fraud, a lack of consideration for the note, and that it was not to be enforced as an actual obligation, operated to vary and contradict the note and should have been excluded. As between the immediate parties, it was competent to show the purpose for which the note was given, that it was executed merely for accommodation, and was without consideration. This testimony may be received without trenching on the rule that oral evidence cannot be used to vary the terms of a written contract." (p. 13.)

Since between the immediate parties parol evidence is proper to show the purpose for which the note was given, then it necessarily follows that parol evidence is proper against one who is not a holder in due course.

The plaintiff's testator, having purchased the note after maturity, was charged with knowledge that it was negotiated to him in violation of the agreement under which it had been given.

The judgment is affirmed.

JOHNSTON, C. J., not sitting.