## BARTELS v. SUTER.

No. 17808. Opinion Filed March 6, 1928.

(Syllabus.)

1. **Judgment — Judgment Notwithstanding Verdict—When Warranted.**

In the absence of special findings contrary to the general verdict, a trial court is without authority to render judgment notwithstanding the verdict, unless the same is warranted by the pleadings.

2. **Bills and Notes—Accommodation Note— Defense of Lack of Consideration Available to Maker Against Purchaser for Value After Maturity.**

Where a party executes to a bank his promissory note, due in six months, without consideration, solely as an accommodation to the payee bank, and six days after maturity of the note, while the same is then held by payee bank, requests surrender and return of the note, and is advised by the

cashier that he was busy just then and that the note would be delivered the next time party was in, and shortly thereafter such note is sold, transferred, and indorsed without recourse by the bank, and later suit is filed by transferee against the maker to recover thereon, held, that, in view of the provisions of the Negotiable Instruments Act, sections 7728 and 7698, C. O. S. 1921, which make no exception in favor of accommodation paper (section 7699, C. O. S. 1921), the defense of want of consideration was available to the maker of such accommodation note as against the holder thereof for value who acquired the same after maturity.

3. **Same—Judgment Against Accommodation Maker not Sustained.**

Record examined, and held, insufficient to sustain judgment of the trial court.

Commissioners' Opinion, Division No. 1.

Error from District Court, Texas County; Arthur G. Sutton, Judge.

Action by A. H. Suter against Henry Bartels on two promissory notes. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

S. W. Hayes, D. A. Richardson, A. W. Gilliland, F. Hiner Dale, and Jack Harris, for plaintiff in error.

Rizley & Loofbourrow and Wade H. Loofbourrow, for defendant in error.

LEACH, C. This action was instituted in the district court of Texas county by A. H. Suter, defendant in error here, as plaintiff, against Henry Bartels, plaintiff in error here, to recover judgment on two promissory notes executed by the defendant, Bartels, in favor of the Texas County National Bank.

One note was for the sum of $3,000 dated April 2, 1923, due six months thereafter, and the other was for $375 dated July 25, 1923, due in 90 days.

The notes sued upon were transferred, after maturity, and without recourse, by the payee bank to E. T. Guymon, and thereafter transferred, without recourse, to the plaintiff. The defendant, Bartels, pleaded that the $3,000 note was executed for the accommodation of the payee bank; that he received no consideration for the same, and that the $375 note was executed upon certain conditions respecting a sale of land, wherein the bank was to have deducted the amount of the note from certain monies held by the bank, which it failed to do; that by reason of such failure he was released from liability; that both notes were transferred after maturity. The plaintiff,

Suter, in reply, alleged that the $3,000 note was executed to the payee bank as a renewal of a former note for the same amount, which former note was executed to take up the certain note of a third party, and to enable the Texas County Bank to nationalize, and, as to the $375 note, denied that the same was executed under the conditions alleged, and alleged the defendant, maker of such note, by paying certain of the monies direct, waived the alleged conditions, if any.

Upon a trial of the cause the court advised and instructed the jury as to the theory and contention of each party as to the purpose and conditions under which the notes were executed.

Certain interrogatories were propounded to the jury embodying the question of whether the consideration for the $3,000 note was the taking up of the Costner note, and did the defendant execute the $3,000 note so that the same could be used for the purpose of deception in the nationalizing of the Texas County National Bank, both of which interrogatories were answered in the negative.

A general verdict was rendered in favor of the defendant. Motion for judgment notwithstanding the verdict was filed by the plaintiff, as to plaintiff's first cause of action, which involved the $3,000 note. The trial court, notwithstanding the verdict, rendered judgment in favor of the plaintiff on the $3,000 note upon the theory that it was an accommodation note in the hands of the plaintiff, who paid value therefor, and on the $375 note, upon the theory that defendant wholly failed to establish his alleged defense. Defendant filed his motion for a new trial, which was overruled, and he brings the cause here for review.

Six assignments of error are set forth in the petition in error, which are disposed of, under argument, in the following order: First. "Error of trial court in sustaining plaintiff's motion for judgment, notwithstanding the verdict."

Under this head it is urged by plaintiff in error that the trial court had no authority to render judgment because such action was not in accord with the provisions of section 682, C. O. S. 1921, and was in conflict with the holding of this court in the case of Barnes v. Universal Tire Protector Co., 63 Okla. 292, 165 Pac. 176, and similar cases, holding, in effect, that where there is no conflict between the special findings of the jury and its verdict, the court is without authority to render judgment notwithstanding the verdict, unless it appears from the statements in the pleadings that the movant is entitled to the judgment asked for; and it is urged that, as to the action on the $3,000 note, the pleadings raised an issue of fact as to whether plaintiff was the owner of the note and whether he paid value for it.

Plaintiff alleged he was the owner and holder for value, before maturity; the indorsement on the note was in blank, and the verified answer of the defendant contained a general denial, and further specifically denied the plaintiff to be a holder for value before maturity. This court, in the case of Southwest General Electric Co. v. Riddle, 66 Okla. 202, 168 Pac. 436, said:

"In an action on a promissory note by one other than the payee, where nothing appears, by indorsement, or otherwise, indicative of the ownership of such note, an allegation that plaintiff is the owner and holder may be put in issue by an unverified answer."

Also Shipman v. Porter, 48 Okla. 284, 149 Pac. 902; First Nat. Bank v. Vaughan (Kan.) 151 Pac. 1118.

In view of the pleadings in the instant case, an issue was raised which would preclude, under the usual holding, judgment notwithstanding the verdict.

Defendant in error says he moved for judgment on the opening statement of defendant and for an instructed verdict, that since he was entitled, in any event, to recover, the irregularity would be harmless error, and, under the provisions of section 2822, C. O. S. 1921, the judgment should not be set aside. A similar contention was made in the case of McAlester v. Bank of McAlester, 95 Okla. 193, 218 Pac. 839, wherein the court said:

"In the absence of special findings, the court is without jurisdiction to enter judgment notwithstanding the verdict unless same is warranted by the pleadings. The court is not authorized to render such judgment because there is an entire failure of evidence to justify the verdict in favor of the prevailing party, or because the evidence shows that as a matter of law the court should have directed a verdict in favor of the losing party."

See, also, Odom v. Cedar Rapids Sav. Bank, 114 Okla. 126, 244 Pac. 758; Barnes v. Universal Tire Protector Co., supra; Hanna v. Gregg, 92 Okla. 34, 217 Pac. 434.

Since we do not agree with the trial judge in his view of the law, relating to an accommodation note, for that reason the rule of harmless error cannot be applied in

this cause, and we find the court was without authority to enter judgment in favor of plaintiff on his first cause of action.

As to the second cause of action, involving the $375 note, it appears to be admitted by defendant in error that the trial court was without authority to render judgment in favor of plaintiff, it being stated in the brief of the defendant in error as follows:

"It is unnecessary to discuss the defendant's assignment on this branch of the case. * * * It is conceded that the court erred when of its own will and motion it entered a judgment against the defendant on the second count."

Were we to reverse this cause upon the grounds so far discussed, it would leave undecided the more important question involved in the first cause of action, which is set forth in plaintiff in error's brief, under the second argument, as follows:

"Assuming that the plaintiff was the owner of the $3,000 note, and that he paid value for it, that it was an accommodation note and was not transferred by the payee until after maturity, was the defense that it was an accommodation paper good as against plaintiff?"

It was determined by the jury, under its special findings and verdict, that the $3,000 note sued upon was an accommodation note given for the accommodation of the payee bank.

It appears from the record that the bank was the owner of, and in possession of, the note at maturity, and thereafter sold and transferred the same without recourse.

Six days after maturity of the note, the maker, defendant, called at the bank and requested the cashier to surrender him the note in accordance with their agreement, and the cashier stated he was busy just then, and told him when he was in again he would get it for him. The defendant testified he was not in town again until about 30 days thereafter, during which time the payee bank had failed, and the bank record disclosed that the note in question, with others, was sold and transferred about 10 days prior to the closing of the bank.

The trial judge, as stated in his judgment, changed his opinion of the law after the trial of the case, and when he entered judgment in favor of the plaintiff was of the opinion that an accommodation maker of a note could not defend against the same on the ground of want of consideration, as against such a note in the hands of a holder for value, notwithstanding the first transfer from the original payee occurred after maturity of the note.

The trial judge is not without precedent for his holding, as it is in accord with the holding of a number of courts. Prior to the adoption of the Uniform Negotiable Instruments Act, which has been adopted by a majority of the states, there was a diversity of opinion in the states on the question of the rights of a transferree holding an accommodation note first transferred after maturity, some states following the English rule, which held that the maker of an accommodation note could not defend against the same in the hands of a holder for value, regardless of whether the note was transferred the first time before or after maturity. And the Uniform Negotiable Instruments Act has likewise apparently failed to secure a uniform construction, and there appears about as much diversity of opinion as there was prior to the introduction of the act.

It was said in the case of Merchants' National Bank of Billings v. Smith (Mont.) 196 Pac. 523:

"In submitting the draft of the Uniform Negotiable Instruments Act, the chairman of the committee in charge of it declared: 'The statute proposed will be found clear, concise, and thorough.' It may be thorough, and it may be conceded that much is expressed in few words, but the fact that courts of high repute have reached diametrically opposite conclusions as to the meaning of several sections, suggests that the language is not as clear as its proponents believed it to be."

The Negotiable Instruments Act was adopted by this state in 1909, and does not appear to have been amended. Section 7699, C. O. S. 1921, defines an accommodation party to be one who has signed the instrument without receiving value therefor, and for the purpose of lending his name to another. Such person is liable to a holder for value notwithstanding such holder at the time of taking such instrument knew him to be an accommodation party.

Section 7722, C. O. S. 1921, defines a holder in due course, among the requirements being that he become the holder of the instrument before it was overdue.

Section 7728, C. O. S. 1921, reads:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former

holder in respect of all parties prior to the latter."

Section 7698, C. O. S. 1921, reads:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course. * * *"

No case from this court has been called to our attention, and we find none passing upon the identical question here raised, i. e., construing the meaning of section 7699, C. O. S. 1921, in connection with the other sections of the same act as applied to a holder of an accommodation note which is first negotiated and transferred after maturity.

There are cases sustaining the statute, holding that an accommodation party cannot defeat a note in the hands of a holder for value, but in those cases it appears that the holder, or those through whom he acquired the same, took the note for value before maturity, or the question of maturity date was not raised.

Defendant in error calls attention to the cases of Neylon v. Liberty Nat. Bank of Pawhuska, 126 Okla. 188, 259 Pac. 545; First Nat. Bank of Tulsa v. Boxley, 129 Okla. 159, 264 Pac. 184; Barnard v. First Nat. Bank of Claremore, 128 Okla. 264, 263 Pac. 160. Those cases do not come within the facts in the present case. The holding in those cases was to the effect that the bank was not the party accommodated, but was a holder for value of the note at maturity; and in the instant case the jury found the note sued upon was not a renewal of the previous note alleged to have been given to enable the bank to nationalize.

Our attention is called to the following authorities which followed the so-called English rule in construing the provisions of the Negotiable Instruments Law as applied to accommodation makers: Marling v. Jones, 138 Wis. 82, 119 N. W. 931; Altfillisch v. McCarty (S. D.) 207 N. W. 67, 48 A. L. R. 1270; Mersick v. Alderman, 77 Conn. 634, A. & E. Ann. Cas. vol. 2, p. 254.

In volume 2, Ann. Cas. page 256, and volume 48, A. L. R. 1280, will be found collected numerous decisions following each of the so-called English rule and American rule. The annotators in 2 Ann. Cas., and in 48 A. L. R., supra, say:

"The weight of American authority is that a transferree of the accommodated party, acquiring accommodation paper after maturity, although he gives a valuable consideration therefor, takes only the title of his transferrer, and obtains no higher right against the accommodation party than he would have in case of the purchase of ordinary commerical paper under similar circumstances."

Some of the state courts in the early decisions apparently followed the so-called English rule, because it had previously been so established and held. The courts of New York at one time followed the English rule, but later, in the case of Chester v. Dorr, 41 N. Y. 279, overruled its earlier holding, and repudiated the English rule. Likewise, Virginia, in the case of Cottrell v. Watkins, 89 Va. 801, 19 L. R. A. 754, 37 A. S. R. 897, 17 S. E. 328. As said in Chester v. Dorr, supra, the purpose and object of making or indorsing a note for the accommodation of another is to obtain credit for such other, or to enable him to do so.

The very terms of the note declare the credit it is intended to procure, that is to say, until the maturity of the note. Within that range, the making and indorsement being unrestricted as to its use, the borrower may use it as his exigencies require, and a transferree may receive it in reliance upon the undertaking which is imported by its terms. But the very term of payment, contained in the note, imports that the accommodating party undertakes that the note shall be paid at its maturity, and that he who then holds a note shall have recourse to him if it be not then paid. One may be willing to guarantee solvency of another for 60 days, or for six months, and yet he would wholly refuse to do so for a longer period, and it is a most material circumstance that the time during which the borrower is at liberty to obtain credit on the note is fixed by the limitation of the time of payment therein.

The party accommodated impliedly agrees to take up the note at maturity and to indemnify the accommodation maker or indorser against consequences of nonpayment.

An accommodation maker or indorser may withdraw from such obligation at any time before it is negotiated by striking his name therefrom, restricting his indorsement thereon, or by giving timely notice to the interested party. 22 A. L. R. 1348.

Assuming, as was so found by the jury, that the maker of the note in the instant case was solely an accommodation maker, accommodating the payee bank, how might he have withdrawn from the note? According to the evidence, the maker, while the note was still in the hands of the accommodated party, and after it was past due, requested the bank cashier to surrender him the note, and was informed by the cashier

that he was busy just then, but would get him the note the next time he came in.

As was said in the Chester v. Dorr Case, supra:

"Is he (maker) to be driven into a court of equity and to praying out an injunction to prevent a subsequent transfer? I think not."

The Kansas court, in the case of Wilhoit v. Seavall, 121 Kan. 239, 246 Pac. 1013, 48 A. L. R. 1273—the same being a case wherein parties executed to bank for its accommodation, and without consideration, a note due 30 days thereafter, with the agreement that it should be returned to them at maturity, and upon request for its return the officers of the bank stated the note could not be found, and three months thereafter the bank failed, and thereafter the note was indorsed and sold in violation of the agreement with the makers—held, the purchaser, after maturity, took the note subject to the equities between the original parties thereto.

In the instant case the note in question was transferred apparently while the bank was in a failing condition, the note being indorsed without recourse.

In Rylee v. Wilkerson, 134 Miss. 663, 99 South. 901, the same being a case involving the question whether the accommodation maker of a note was liable to a holder for value who acquired it from the payee after maturity, the court there, in construing the provisions of the Negotiable Instruments Act, similar to our statute, said:

"The * * * sections of the Negotiable Instruments Act should be construed together so as to harmonize them, if possible, and render them consistent with the scope and object of the act, and in construing these several provisions the intention of the Legislature and the design of the act should control, although this may, in some measure, conflict with the letter of certain of its provisions" —and there held that the makers, indorsers, or acceptors of accommodation paper should be permitted the same defense as is guaranteed to the makers, indorsers, or acceptors of negotiable paper for value, when acquired after maturity.

"A statute is passed as a whole and not in parts or sections and is animated by one general purpose or intent. Consequently, the several parts or sections of an act are to be construed in connection with every other part or section, and all are to be considered as parts of a connected whole and harmonized, if possible, so as to aid in giving effect to the intention of the lawmakers." 25 R. C. L. 1009, sec. 248.

We think the provisions of section 7699,

C. O. S. 1921, construed in connection with the other provisions of the same act, were intended and should be limited to holders for value who acquired the instrument before maturity, and their transferrees. The transferree of commercial paper, after maturity, generally takes it upon the strength of the indorsement of the party from whom he acquires it.

We think the sounder rule, and one more in accord with the understood and established rule of handling of commercial paper, to be that the rights of the respective parties to an accommodation instrument are fixed as they exist at the time of the maturity of the instrument, and since the Legislature has provided, by section 7728, C. O. S. 1921, that absence or failure of consideration is a defense as against any person except a holder in due course, we are of the opinion that section 7699, C. O. S. 1921, should be construed as rendering an accommodation party liable to a holder for value only when such holder, or those through whom he acquired the instrument, became a holder for value before maturity of the instrument.

For the reasons herein stated, the judgment of the trial court is reversed, and the cause remanded, with directions to set aside the judgment in favor of the plaintiff and to render judgment in accordance with the verdict and finding of the jury.

BENNETT, TEEHEE, REID, and HERR, Commissioners, concur.

By the Court: It is so ordered.

Note—See nuder (1) 33 C. J. p. 1180, §112; anno. L. R. A. 1916E, 828; 15 R. C. L. 606; 3 R. C. L. Supp. p. 474; 5 R. C. L. Supp. p. 844; 6 R. C. L. Supp. p. 925. (2.3) 8 C. J. p. 389, §576; p. 748, §1019.