[Civ. No. 6477. First Appellate District, Division Two.—July 5, 1929.]

PACIFIC–SOUTHWEST TRUST & SAVINGS BANK (a Corporation), Appellant, v. VALLEY FINANCE CORPORATION, Respondent.

H. A. Savage and Sutherland & Dearing for Appellant.

Christian Hoeppner and Wakefield & Hansen for Respondent.

STURTEVANT, J.—The plaintiff commenced an action to recover on a promissory note. The defendant answered by interposing certain denials, by alleging a guarantee and by alleging an affirmative defense to the effect that the plaintiff was not the holder in due course and that the note sued on was an accommodation note for which the defendant received no value, and by alleging a further defense that the note was *ultra vires*. The action was tried before the trial court sitting without a jury. The trial court made findings of fact in favor of the defendant and the plaintiff has appealed.

As the facts are not clearly set forth in the briefs of either party, we will make an attempt at setting them forth. The note sued on was a renewal note made by the defendant on March 1, 1923, and by its terms was due May 30, 1923. It was made payable to and delivered to the Valley Bank. The payee sold out to this plaintiff and the note was delivered to this plaintiff on March 1, 1924, nearly a year after its maturity.

On August 22, 1922, W. D. Mitchell was president and chief executive officer of the Valley Bank. He was likewise president of the California Motor Transport Association. The defendant corporation was engaged in dealing in automobile paper. It was financially sound and was a depositor in the Valley Bank. About two weeks prior to August 22, 1922, Mr. Mitchell sent for the officers of the defendant and when they called at the bank he stated that the California Motor Transport Association was embarrassed financially; that it had moneys due it which would be paid in

the near future, but that for the time being it was short of cash. He also stated that said corporation had borrowed from the Valley Bank and that the bank held more of the obligations of the Transport Association than it was entitled to hold under the law; that the bank examiner was expected at any time and therefore it was the wish of himself and of the Valley Bank that the amount of the obligations of the Transport Association should be reduced to the extent of $2,500; and that he and the Valley Bank wanted the defendant to execute an accommodation note which would be used in the following manner: The defendant was to execute its note to the bank, receive from the bank $2,500 to be deposited in the account of the defendant, and that defendant should thereupon draw its check in favor of the Transport Association. The Transport Association would execute its note in favor of the defendant. That note would be used as collateral to be attached to defendant's note. As fast as the Transport Association could make collections the amounts would be paid on its note to the defendant and as that note was liquidated, at the same time the defendant's note to the bank would be liquidated. Such proceedings were had that a note was written by the Transport Association in favor of the defendant on the eighteenth day of August, 1922. That note was in the sum of $2,575. Mr. Mitchell caused said note to be made in the sum of $2,575 instead of $2,500 without consulting the defendant and, in fact, defendant never knew until a later date that the variance existed. On the twenty-second day of August, 1922, the president and secretary of the defendant corporation appeared at the bank and a note dated August 22, 1922, in favor of the bank for the sum of $2,500 was placed before the officers of the defendant corporation and they were shown the place to sign and they signed. At the same time a check in favor of the Transport Association in the sum of $2,500, under the same date, was drawn on the bank and was presented to the officers of the defendant corporation and they were shown where to sign and they signed. At the same time, and as a part of the same transaction, the check was indorsed by the trustee of the Transport Association and was deposited in the account of the Transport Association. Furthermore, a deposit slip was prepared and executed showing a deposit in the Valley Bank by defendant, "Note . . . $2500." Each

and all of these acts occurred in the office of Mr. Mitchell in the Valley Bank. Each and all of the foregoing facts were testified to by Mr. Hunt, who was trustee of the Transport Association and messenger for Mr. Mitchell, by Mr. Knapp, secretary of the defendant corporation and by Mr. Williams, vice-president of the defendant corporation. No witness was called in contradiction. It should be added that at the time of the transaction on August 22, 1922, Mr. Mitchell stated that as an official of the bank he could not sign any of the paper, but that he would personally guarantee to protect the defendant corporation from any liability on the note executed by it. At no time and in no manner did the defendant corporation receive anything except as hereinabove stated.

After the defendant had executed its said note dated August 22, 1922, Mr. Mitchell produced the note of the Transport Association dated August 18, 1922, asked the defendant to indorse it and after it was so indorsed, attached it to the defendant's note as collateral security thereof.

There is not a particle of evidence in the record that at any time the Valley Bank turned over, or agreed to turn over, to the defendant any of the notes of the Transport Association which were at that time held by the bank.

Except as recited above the defendant never had the physical possession of the note dated August 18, 1922, executed by the Transport Association.

The plaintiff contends the trial court erred in receiving evidence of contemporary agreements between the parties and it cites and relies on *Leonard* v. *Miner,* 120 Cal. 403 [52 Pac. 655]; *San Jose Sav. Bank* v. *Stone,* 59 Cal. 183. Neither of those cases involved an accommodation note and neither case arose since the amendment in 1917 to Civil Code, division 3, part 4, title XV. *Coghlin* v. *May,* 17 Cal. 515, did involve an accommodation note and it rules the point against the plaintiff.

The plaintiff's main contention is that plaintiff, for value, bought, without notice, the note from the Valley Bank, and although it so bought after the maturity of the note, the defendant may not set up as a defense the facts above recited. The plaintiff cites and relies on *Bank of Orland* v. *Harlan,* 188 Cal. 413 [206 Pac. 75]. The defendant states that the case cited is not in point and then the

defendant cites *First Nat. Bank* v. *Reed,* 198 Cal. 252 [244 Pac. 368]. In reply the plaintiff points out that Reed got nothing and that the rights of no third person were involved. This defendant got nothing, and if the distinction went no further the defendant's answer is sufficient. But the plaintiff stands on the further claim that it is an innocent purchaser for value and as against this defendant the defense is not sound. In reply the defendant asserts that the plaintiff is not a holder in due course and that it is in no better position than its vendor (Civ. Code, sec. 3133) and that in this plaintiff's hands the note is subject to the same defenses as if it were non-negotiable (Civ. Code, sec. 3139), and that it is statutory law that the transfer of a non-negotiable instrument transfers "all the rights of the assignor under the instrument to the assignee, subject to all equities and defenses existing in favor of the maker at the time of the indorsement" (Civ. Code, sec. 1459). And the defendant further claims that ". . . as regards a remote party other than a holder in due course, the delivery . . . may be shown to have been . . . not for the purpose of transferring the property in the instrument." (Civ. Code, sec. 3097.) The exact point has never been decided since the amendment in 1917 to the Civil Code, sections 3082–3206. The point has been much discussed in the reviews and the authorities are not in harmony. In the case of *Bartels* v. *Suter,* 130 Okl. 7 [266 Pac. 753], the Supreme Court of Oklahoma entered upon an exhaustive consideration of the question. It reached the conclusion that if all of the sections of that law are read and construed together that, under a similar set of facts, the defense, pleaded by this defendant and found by the court to be true, constitutes a complete defense under the statute. (See, also, Brannan's Negotiable Instrument Law, 4th ed., p. 286.) Under these authorities we think the judgment should be affirmed. It is so ordered.

Koford, P. J., and Nourse, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 2, 1929, and the following opinion then rendered thereon:

THE COURT.—The plaintiff has filed a petition for a rehearing. It earnestly presses the point that the rights of the plaintiff as an accommodation party are those of a holder for value notwithstanding that it took the note after its maturity.

■ At an early date the point was decided against the plaintiff. (*Coghlin* v. *May*, 17 Cal. 515.) In 1917 we adopted the Uniform Negotiable Instruments Law. (Stats. 1917, p. 1531). It was adopted by incorporating it into our Civil Code and it became division 3, part 4, title XV. As so adopted it contained four chapters. Some of the chapters contained as many as eight articles or more. When so adopted it will be noted that the Civil Code contained cognate provisions (secs. 953, 1459) and that the Code of Civil Procedure contained cognate provisions. (Code Civ. Proc., sec. 368.) We are commanded by the law-making power to read the provisions of our four codes as though all such codes had been passed at the same moment of time and were parts of the same statute, and if the provisions of any article conflict with or contravene the provisions of another article of the same chapter, the provisions of each article must prevail as to all matters and questions arising out of the subject matter of such article. (Pol. Code, secs. 4480 and 4483.) When the note in suit was executed our statutes provided as follows: In the Civil Code, section 3133 defined "a holder in due course." That definition does not include this plaintiff. Section 3139 provided, "In the hands of any holder *other than a holder in due course,* a negotiable instrument is subject to the same defenses as if it were nonnegotiable. . . . " Section 1459 provided: "A nonnegotiable written contract for the payment of money . . . may be transferred . . . Such indorsement shall transfer all the rights of the assignor under the instrument to the assignee, subject to all equities and defenses existing in favor of the maker at the time of the indorsement." Section 953 provided: "A thing in action is a right to recover money . . . by a judicial proceeding." Section 368 of the Code of Civil Procedure, provided: "In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off, or other defense existing at the time of, or before, notice of the assignment. . . . " Section 3097 of

the Civil Code provided: " . . . As between the immediate parties, and as regards a remote party *other than a holder* in due course . . . the delivery may be shown to have been conditioned, or for a special purpose only, and not for the purpose of transferring the property in the instrument. . . . " There is no provision which expressly excepts accommodation paper from the foregoing rules. If it is to be excepted the exception rests in argument. Our statutes do not classify commercial paper and then state the rules pertinent to accommodation instruments. But in the Civil Code, title XV, sections 3082–3206, *supra*, chapter I is addressed to instruments in general, chapter II to bills of exchange, chapter III to promissory notes and checks and chapter IV is the embodiment of general provisions. There is no chapter and there is no article addressed to accommodation paper. There is section 3110 which defines an accommodation party and then provides: "Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." The plaintiff cites and relies on that section as supporting its claims. That argument fails to take into consideration a well-known fact in the history of jurisprudence. From an early date the contention was made that an accommodation party could set up as a defense, want of consideration, as against an indorsee who took the instrument for value before maturity. (8 C. J., sec. 410; *Violett* v. *Patton,* 5 Cranch (9 U. S.), 142, 151 [3 L. Ed. 61].) The provision relied on, section 3110, is apparently an enactment to settle the rule just mentioned. Nothing on its face shows to the contrary. It is in an article addressed to "consideration." Conceding, solely for argument, that there is any conflict between that section and other sections of the same title, the provisions of section 3139, which is contained in an article on "Rights of Holder," will control. (Pol. Code, sec. 4483) and as section 3139 is the later in numerical order it will control for that additional reason. (Pol. Code, sec. 4484.) But we think there is no conflict and for the soundest of reasons the position of the defendant may not be disturbed. The construction which we have adopted gives force and effect to each and all of the provisions of the statute and does not lead to an absurdity. As between the Valley Bank and this defendant

each and every defense which this defendant sought to interpose would have been sustained. (*First Nat. Bank* v. *Reed*, 198 Cal. 252 [244 Pac. 368].) But as we have just shown by the provisions of our statutes the rights of this defendant against this plaintiff are the same as against the Valley Bank. These conclusions are supported by what is known as the majority rule. (Brannan's Negotiable Instrument Law, 4th ed., p. 286; *Wilhoit* v. *Seavall*, 121 Kan. 239 [48 A. L. R. 1273, and note, 246 Pac. 1013].) In *Rylee* v. *Wilkinson*, 134 Miss. 663, 669 [99 South. 901, at page 902], the Supreme Court of Mississippi said: "There appears no sound reason for the distinction in the two classes of negotiable paper, and it would seem that the makers, indorsers, or acceptors of accommodation paper should be permitted the same defenses as are guaranteed to the makers, indorsers, or acceptors of negotiable paper for value." In *Cottrell* v. *Watkins*, (89 Va. 801, 817 [19 L. R. A. 754, 759, 17 S. E. 328, 333]), 37 Am. St. Rep. 897, the Supreme Court of Virginia stated the contention and then expressed itself as follows on page 906: "Why, then, subject the makers, indorsers, or acceptors of such paper to this species of outlawry by denying to them the defenses guaranteed to the makers, indorsers, and acceptors of negotiable paper for value?

We know of no sufficient reason upon which to found any such doctrine, nor do we believe the ingenuity of man can suggest one. The reason; and the only reason, given in the books is, that it is 'considered that parties to accommodation paper hold themselves out to the public, by their signatures, to be bound to every person who shall take the same for value to the same extent as if paid to him personally.' This is no reason whatever for the distinction, as precisely the same reason is applicable to the parties to paper for value." Finally, in the case of *Bartels* v. *Suter*, 130 Okl. 7, 11 [266 Pac. 753, 757], the Supreme Court of Oklahoma, after making an exhaustive study of the subject, reaches the conclusion that the provisions of the Negotiable Security Act " . . . should be construed as rendering an accommodation party liable to a holder for value only when such holder or those through whom he acquired the instrument became a holder for value before the maturity of the instrument."

The petition is denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 29, 1929.

All the Justices concurred.